UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BURT LEE BURNETT | § | CASE NUMBER 17-42678-rfn7 |
| | § | |
| Debtor | § | CHAPTER 7 |
| | § | |

## KINSALE INSURANCE COMPANY'S AMICUS BRIEF
## REGARDING INSURANCE COVERAGE AVAILABILITY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KINSALE INSURANCE COMPANY ("Kinsale") and files this Amicus Brief Regarding Insurance Coverage Availability. This issue may be of interest to the Court as same relates to the Motion to Lift Stay filed by Aylois Cook (Dkt. 22).

### Procedural Background

1. Debtor Burt Lee Burnett ("Debtor") is an attorney[1] who filed for bankruptcy protection on June 30, 2017. At the time of filing, Debtor was a defendant in connection with claims brought by Aylois Cook. As detailed *infra*, Mr. Cook was a one-time client of debtor who alleges that Debtor committed legal malpractice in connection with that representation. Mr. Cook has requested that the Court lift the automatic stay imposed by the U.S. Bankruptcy Code so that his legal malpractice case may proceed in state court. Implicit in Mr. Cook's request is the idea that insurance coverage will be available to Mr. Cook from which collection might occur in the event Mr. Cook is successful in his claims against Debtor. As detailed below, Mr. Cook's assumption is incorrect.

---

[1] Kinsale notes that characterizing Mr. Burnett as an attorney may not currently be accurate, as he currently labors under a suspension of his license to practice law.

### *The Underlying Malpractice Claim*

2.        Mr. Cook alleges that he suffered personal injuries in a trucking accident, and that he retained Mr. Burnett to represent his interests in connection with same.[2]  Mr. Cook alleges that Mr. Burnett and his lawfirm filed a petition (the "Underlying Lawsuit") on behalf of Mr. Cook. The Underlying Lawsuit concluded when Mr. Burnett's firm reached a settlement agreement with the trucking company.  That settlement agreement contains a notarized signature purporting to be that of Mr. Cook.[3]  The settlement was funded and the proceeds were placed in the IOLTA account for Debtor's lawfirm.[4]  The parties to the Underlying Lawsuit jointly filed a motion to dismiss with the presiding court, thereby ending the Underlying Lawsuit.[5]  A portion of the settlement funds were paid to Mr. Cook's wife, but Mr. Cook never received a distribution.

3.        In the malpractice lawsuit filed by Mr. Cook, Mr. Cook alleges that he never consented to the settlement of the Underlying Lawsuit.  Mr. Cook further alleges that the actions of Debtor in allowing the Underlying Lawsuit to be settled and dismissed without his consent, among others, amount to legal malpractice.

4.        During the course of this bankruptcy proceeding, Debtor filed information with this Court identifying the IOLTA account and noting that same had been closed.[6]  This admits that the settlement funds from the Underlying Lawsuit are no longer in the IOLTA account.  The current location of the settlement funds remains unknown, and same are not identified among the Debtor's assets.

---

[2]  See, Plaintiff's Amended Petition, attached as Exhibit A to Dkt. 22.
[3]  See, Exhibit 1, Signed, Notarized Settlement Agreement.
[4]  See, Exhibit 2, Check Stub Showing Deposit of Funds into IOLTA Account dated April 3, 2015.
[5]  See, Exhibit 3, Dismissal of the Underlying Lawsuit.
[6]  See, Exhibit 4, Debtor's Statement of Assets, Showing Closure of IOLTA Account.

LEGAL\32520728\1

*The Kinsale Policy*

5.      Kinsale issued Lawyers Professional Liability Policy # 0100035982-0 to The Burnett Law Firm (the "Policy").[7]  The Policy covers dates effective 02/20/2016 to 02/20/2017 and has a $2,000,000 per occurrence and aggregate limit.  Importantly, the Policy also contains numerous exclusions, including the following:

**SECTION III- EXCLUSIONS**

This Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged:

**D.** Commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money, premium or tax;

**E.** "Bodily injury";

**L.** Notarization of a signature without the physical appearance of the signatory before the "insured";

**M.** Criminal act;

**N.** Fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature. However, if such allegations involve a "claim" to which this insurance otherwise applies, we shall defend such allegations against the "insured" until a judgment or other final adjudication establishes, or such "insured" admits, that the act, error, omission or offense was committed, or personally acquiesced in, by such "insured";

**R.** Payment, division or apportionment or return of any fees;

The Policy also contains an endorsement which excludes coverage for lawsuits arising before the "Prior or Pending Litigation Date":

---

[7] See, Exhibit 5, Policy.

LEGAL\32520728\1

This endorsement modifies insurance provided under the following:

ALL COVERAGE FORMS

| SCHEDULE |
| --- |
| Prior or Pending Litigation Date  02/20/2016 |

The following exclusion is added to this Policy:

> This Policy does not apply to any "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving any litigation, proceeding or administrative hearing brought prior to or pending as of the Prior or Pending Litigation Date shown in the Schedule above, or to any future litigation, proceeding or administrative hearing based upon any such litigation, proceeding or administrative hearing or derived from the same facts or circumstances.

6.    After Debtor placed Kinsale on notice of Mr. Cook's malpractice claim, Kinsale issued a reservation of rights letter, which has been amended.[8]  Kinsale reserved rights to deny coverage, but appointed defense counsel to appear on Debtor's behalf.

### Coverage Does Not Exist for Mr. Cook's Claims

7.    Simply, either Mr. Cook consented to the settlement in the Underlying Lawsuit, or he did not.  If Mr. Cook consented to the settlement, then Mr. Cook would be entitled to the settlement proceeds.  However, coverage would not exist for any claim relating to the failure to properly handle, manage, allocate or distribute those funds.

8.    On the other hand, if Mr. Cook did not consent to the settlement in the Underlying Lawsuit, then another exclusion will apply.  The settlement agreement bears a notarized signature purporting to be that of Mr. Cook.  If Mr. Cook did not consent to the settlement by signing the agreement, then the notarization is false.  In this instance, the exclusion concerning notarization errors would preclude coverage.  Similarly, the additional exclusions regarding fraudulent or criminal acts also may apply.  Given that $181,000 has evidently disappeared while under the

---

[8]  See Exhibit 6, Amended Reservation of Rights Letter.

control of Debtor, it is hard to see how those exclusions could do anything other than exclude coverage for Mr. Cook's claims.

9. Notably, all exclusions are subject to the language "arising out of" when describing their reach. Texas courts give broad application to the language at issue when such language is used. Specifically, Texas courts construe the phrase "arising out of", as used in an insurance policy, to mean "only a causal connection or relation between the act and the alleged injury."[9] Given the absence of the settlement funds and the claimed false settlement agreement, there is no scenario under which Mr. Cook can plead a claim of legal malpractice which will not bring one or the other of these exclusions into play.

*Coverage May Be Voidable*

10. Debtor procured the Policy via application dated February 18, 2016. In connection with this application, Debtor represented that neither he nor any other member of his lawfirm "know of any circumstances, acts, errors, omissions, or any allegations or contentions of any incident that could result in a claim."[10] The acts giving rise to liability in connection with the Underlying Lawsuit all predate this representation. As such, should the allegations in Mr. Cook's petition appear true, Debtor's representations would violate the following Policy provisions and render the Policy void:

---

[9] See, *Utica National Ins. Co. of Texas v. American Indemn. Co.*, 141 S.W.3d 198, 203 (Tex.2004). *Mid–Century Insurance Co.*, 997 S.W.2d at 156 (Tex.1999) (Use of "arising out of" language connotes only "but-for causation and removes any proximate cause requirement.). See also, *Hartford Cas. Ins. Co. v. DP Engineering, LLC*, 827 F.3d 423, 427 (5th Cir. 2016); *Crose v. Humana Ins. Co.*, 823 F.3d 344, 349 (5th Cir. 2016); *Landing Counsel of Co-Owners v. Federal Ins. Co.*, 2017 WL 1092310 (S.D.Tex March 23, 2017).
[10] See, Exhibit 7, Application for Insurance.

**SECTION VII—GENERAL CONDITIONS**

D.      Representations

By accepting this Policy, you agree that:

1.      The "application", and all other information and statements provided to us are true, accurate and complete and that the "application" and all such information and statements are made part of this Policy;

2.      The "application" and all other information and statements provided to us are representations and warranties made to us on behalf of all "insureds";

3.      The Policy has been issued in reliance upon the truth and accuracy of those representations and warranties; and

4.      Concealment, misrepresentation or fraud in the procurement of this Policy which, if known by us, would have led us to refuse to enter into this contract at its current terms, conditions or pricing, or to provide coverage for a "claim" hereunder, will be deemed material and this Policy shall be void. In such an event, the Company shall have no obligation to return any portion of the premium.

I.      Fraudulent Acts

If any "insured" commits fraud in connection with any "claim" submitted to the Company, this insurance shall become void from the date such fraudulent "claim" is submitted. In such an event, the Company shall have no obligation to return any portion of the premium.

11.      Additionally, in connection with its investigation into these potential coverage issues, Kinsale requested that Debtor provide to it certain information relating to the receipt and application of the funds issued in connection with the settlement of the Underlying Lawsuit.[11] Debtor has failed to provide the requested information. Debtor's failure to act may violate Debtor's duty to cooperate under the Policy, which failure would also render coverage void. The Policy states:

---

[11] See, Exhibit 8, email to Burt Burnett requesting access to IOLTA account information. See also, follow-up letter to Burt Burnett after non-production of requested information.

**SECTION VI—WHEN THERE IS A CLAIM**

The "insured" shall immediately provide us with written notice of any "claim." You and any other "insured" shall immediately provide us with any demands, notices, summons or other documents received in connection with the "claim", authorize us to obtain records and other information, and cooperate with us in the investigation, defense or settlement of the claim.

All "insureds" shall assist us in the enforcement of any right against any person or organization that may be liable to any "insured" because of "damages" or "defense costs" to which this insurance may also apply.

No "insured" will make a payment, accept liability, assume any obligation or incur any expense without first obtaining our approval, except at that "insured's" own cost.

*Conclusion*

12.     To the extent that the Court is inclined to lift the stay to allow Mr. Cook to prosecute those claims because a collateral source of funds exists, Kinsale believes that Debtor will not have coverage to provide an indemnity against Mr. Cook's claims.

Respectfully submitted:

*/s/ Gregory S. Hudson*

Gregory S. Hudson
State Bar No. 00790929
Southern District Bar Number 19006
COZEN O'CONNOR
LyondellBasell Tower
1221 McKinney, Suite 2900
Houston, Texas  77010
(832) 214-3900
(832) 214-3905 (Fax)
ghudson@cozen.com

**ATTORNEYS FOR PLAINTIFF KINSALE INSURANCE COMPANY**

7

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing instrument is being served electronically upon all counsel of record in accordance with the Federal Rules of Civil Procedure on September 18, 2017.

Areya Holder
Holder Law
800 W. Airport Freeway, Suite 800
Irving, Texas 75062

Erin Marie Schmidt
United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242-0996

Mark A. Nacol
The Nacol Law Firm PC
990 South Sherman Street
Richardson, Texas 75081

*/s/ Gregory S. Hudson*
Gregory S. Hudson

# EXHIBIT 1

CAUSE NO. 02-3254

| | | |
|---|---|---|
| AYLOIS COOK and STACEY WYATT | § | IN THE 259TH JUDICIAL |
| | § | |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| NHAN DUONG HA and JEFFREY DON | § | |
| PIPPIN | § | JONES COUNTY, TEXAS |

## RELEASE, COMPROMISE AND INDEMNITY AGREEMENT

WHEREAS, on or about June 25, 2013, STACEY WYATT ("Wyatt") was a passenger on a motorcycle ("the motorcycle") being driven by AYLOIS COOK ("Cook") when the motorcycle crashed, allegedly as a result of the operation of a 2003 Freightliner being driven by NHAN HA ("Defendant") and Wyatt and Cook allegedly sustained personal injuries and property damage as a result of said collision, all of which is hereinafter sometimes referred to as the "Occurrence"; and

AYLOIS COOK and STACEY WYATT will hereinafter be referred to as "Plaintiffs"; and

WHEREAS, Plaintiffs sued Defendant in Cause No. 02-3254 in the 259TH Judicial District Court of Jones County, Texas, styled "*Aylois Cook and Stacey Wyatt v. Nhan Ha and Jeffrey Don Pipkin*" (hereinafter referred to as "the Lawsuit"), alleging that Defendant is legally responsible for the Occurrence and seeking to recover money damages from Defendant; and

WHEREAS, Defendant has denied liability and continues to deny liability, but Plaintiffs and Defendant have agreed to compromise and settle this dispute to avoid further litigation for the total sum of TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($200,000.00), to be paid to Plaintiffs by Defendant's insurer in return for a full and complete release of any and all claims or causes of action which were asserted or could have been asserted against Defendant in the Lawsuit.

NOW, THEREFORE, WITNESSETH, that for and in consideration of the total sum of TWO HUNDRED THOUSAND AND 00/100 DOLLARS ($200,000.00) the receipt and sufficiency

1



of which is hereby acknowledged and confessed by Plaintiffs, Plaintiffs hereby release, acquit, and forever discharge Defendant and all other persons, firms, corporations, or associations in privity with Defendant, including without limitation Canal Insurance, of and from any and all actions, causes of action, liens, claims or demands of any nature whatsoever (whether based on contract, common law, statute, rule or regulation, state or federal), which are now held or owned by Plaintiffs or which may be held or owned by them in the future, to recover for personal injury damages (including, without limitation, medical bills and expenses, loss of earnings, loss of earning capacity, physical impairment, disfigurement, physical pain and mental anguish and loss of consortium), property damages, punitive and/or exemplary damages and any other form or category of damage, loss or expense of any nature whatsoever, whether known or unknown, whether pled or not pled, which have resulted from or which may in the future result from the Occurrence or claims made by Plaintiffs as a result of the Occurrence, either directly or indirectly.

It is specifically understood and agreed that this Release, Compromise and Indemnity Agreement is intended to embrace and extinguish, without limitation, any and all claims and causes of action which were or which could have been asserted in the Lawsuit including, but not limited to, any claims or causes of action for violation of any common law rule, statute, law, or regulation, state and federal, whether or not named herein. Plaintiffs further agree that the Lawsuit shall be dismissed with prejudice to refiling in any form. Plaintiffs further agree that this release shall be, and is considered as, a bar to the further prosecution of any suit against any person or entity hereby released to recover any form or category of damage, loss or expense arising, directly or indirectly, out of the Occurrence, and shall be binding as such upon Plaintiffs, Plaintiffs' family, heirs, executors, administrators, successors and assigns. **PLAINTIFFS UNDERSTAND AND AGREE THAT BY SIGNING THIS DOCUMENT, THEY ARE RELEASING ANY AND ALL CLAIMS AND**

2

CAUSES OF ACTION OF WHATEVER NATURE THAT THEY MAY NOW OR HEREAFTER OWN OR HOLD AGAINST THE PERSONS AND ENTITIES RELEASED HEREBY TO RECOVER FOR ANY DAMAGE, LOSS, EXPENSE OR INJURY OF ANY NATURE WHATSOEVER WHICH HAS RESULTED, OR WHICH MAY IN THE FUTURE RESULT, FROM THE OCCURRENCE, EVEN IF SUCH DAMAGE, LOSS, EXPENSE OR INJURY WAS CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE (WHETHER SOLE, CONCURRENT, ORDINARY AND/OR GROSS) MALICE, OR OTHER ACTS OR OMISSIONS (WRONGFUL OR OTHERWISE) OF THE PERSONS AND ENTITIES RELEASED HEREBY.

Plaintiffs further agree to indemnify and hold harmless the Defendant from any and all other claims made by any governmental entity and/or any medical lien holder and/or subrogational interest with a legal right to claim by, through or on behalf of Plaintiffs, claiming an interest in the proceeds of the settlement. THIS AGREEMENT TO INDEMNIFY, DEFEND AND HOLD THE PERSONS AND ENTITIES RELEASED HEREBY HARMLESS INCLUDES, BUT IS NOT LIMITED TO, INDEMNITY FOR AND AGAINST ANY AND ALL POTENTIAL CLAIMS, DEMANDS, ACTIONS AND CAUSES OF ACTION (INCLUDING REIMBURSEMENT OF ANY ATTORNEY'S FEES AND EXPENSES INCURRED IN DEFENDING AGAINST SUCH CLAIMS AND IN ENFORCING THIS AGREEMENT) EVEN THOUGH SUCH CLAIMS, DEMANDS, ACTIONS AND/OR CAUSES OF ACTION MAY BE THE CONSEQUENCE OF THE NEGLIGENCE (WHETHER SOLE, CONCURRENT, JOINT, ORDINARY AND/OR GROSS), MALICE OR OTHER ACTS OR OMISSIONS (WRONGFUL OR OTHERWISE) OF THE PERSONS AND ENTITIES RELEASED HEREBY.

3

For the same consideration, Plaintiffs represent (1) that they have paid or will pay and assume complete responsibility for any and all medical bills and/or expenses incurred or which he may incur in the future, (2) that there are no liens that exist for any hospital or other medical services provided to Plaintiffs as a result of the Occurrence, and (3) Plaintiffs have not assigned any portion of the claims and causes of action released hereby, except to his undersigned attorney, whose claims and/or liens are likewise completely extinguished by the attorney's execution of this instrument.

FURTHER, all parties presently intend and contemplate that all of the payments made to AYLOIS COOK and STACEY WYATT pursuant to this Release are for damages received on account or personal physical injuries or physical sickness with the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, and no portion of those amounts represent exemplary or punitive damages.

FURTHER, it is expressly understood and agreed by Plaintiffs that this settlement is a compromise of doubtful and disputed claims, that the payment made herein by or on behalf of Defendant is not to be construed as an admission of liability on the part of Defendant, by whom liability is expressly denied.

**Finally, Plaintiffs represent that they have discussed this Release, Compromise and Indemnity Agreement with their attorney, who has approved same, and who has fully explained its meaning to them. Plaintiffs enter into this Release, Compromise and Indemnity Agreement voluntarily and they have not been induced to enter into same by the statements, acts, or representations of Defendant, or of anyone in privity with Defendant, connected with Defendant, or purporting to act for Defendant.**

EXECUTED this _27_ day of _May_____, 2015.

4

_____
AYLOIS COOK

_____
STACEY WYATT

THE STATE OF TEXAS      §
                        §      KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TAYLOR        §

    THAT BEFORE ME, the undersigned authority, on this day personally appeared AYLOIS COOK and STACEY WYATT, known to me to be the person whose names are subscribed to the foregoing instrument, and acknowledged to me that they have read and understands the foregoing instrument, that the statements made therein are within their personal knowledge and are true and correct and that they executed the same for the purposes an consideration therein expressed.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this 27 day of May , 2015.



STEPHAN MAYS
Notary Public, State of Texas
My Commission Expires
January 27, 2018

_____
Notary Public, State of Texas

**RELEASE, COMPROMISE AND INDEMNITY AGREEMENT
APPROVED:**

_____
BURT BURNETT
State Bar No. 00787171
MAJD GHANAYEM
State Bar No. 24078556
**BURNETT LAW FIRM**
P.O. Box 1521
Abilene, TX 79604
PH: (325) 673-4357
FX: (325) 428-0428

5

# EXHIBIT 2

# Canal Insurance Company
P. O. Box 7 Greenville, SC 29602

No **900265470**

Date: 03/26/2015

Amount $********181,000.00

| Claim Number | Invoice Date Description | | Amount |
|---|---|---|---|
| L486533AL | 03/26/2015 | | 181,000.00 |
| SERVICES CLAIM L486533 | | | |
| CLAIM L486533AL | | | |
| | | CHECK TOTAL.............................. | $********181,000.00 |

*MO: 4/13/15 deposited to ITA*

ALLEN LAW FIRM
PO BOX 700
ABILENE, TX 79604

**EXHIBIT**
**2**

# Canal Insurance Company
P. O. Box 7 Greenville, SC 29602

No **900265470**

Date: 03/26/2015

Amount: $********181,000.00

| Claim Number | Invoice Date Description | Amount |
|---|---|---|
| L488533AL | 03/26/2015 | |
| | SERVICES | 181,000.00 |
| | CLAIM L486533 | |
| | CLAIM L486533AL | |

CHECK TOTAL............................... $********181,000.00

ALLEN LAW FIRM
PO BOX 700
ABILENE, TX 79604

---

THIS CHECK IS VOID WITHOUT A PURPLE ... BORDER AND BACKGROUND PLUS A KNIGHT & FINGERPRINT WATERMARK ON THE BACK - HOLD AT ANGLE TO VIEW

GREENVILLE, SOUTH CAROLINA

CLAIM NO. L486533AL

TD Bank
Greenville, SC

07-219
532

No **900265470**

POLICY NO. PIA07426201

AGAINST NHAN HA

DATE 06/25/2013

One Hundred Eighty-One Thousand Dollars and Zero Cents

$********181,000.00

PAY TO THE ORDER OF: ALLEN LAW FIRM, LLP IOLTA TRUST ACCOUNT ON BEHALF OF AYLO IS COOK

VOID AFTER 60 DAYS

COVERAGE DESCRIPTION - FOR: OTHER VEHICOLLISION
OTHER:

Canal Insurance Company
P. O. Box 7 Greenville, SC 29602

PLAINTIFF'S ORIGINAL PETITION

⑈900265470⑈ ⑆053902197⑆ 7100510197⑈

Page 52

# Canal Insurance Company
P. O. Box 7 Greenville, SC 29602

No 900265471
Date: 03/26/2015
Amount: $*********19,000.00

| Claim Number | Invoice Date Description | Amount |
|---|---|---|
| L488533AL | 03/26/2015 | 19,000.00 |
| | SERVICES | |
| | CLAIM L488533 | |
| | CLAIM L488533AL | |

CHECK TOTAL.................... $*********19,000.00

ALLEN LAW FIRM
PO BOX 700
ABILENE, TX 79604

---

# Canal Insurance Company
P. O. Box 7 Greenville, SC 29602

No 900265471
Date: 03/26/2015
Amount: $*********19,000.00

| Claim Number | Invoice Date Description | Amount |
|---|---|---|
| L488533AL | 03/26/2015 | 19,000.00 |
| | SERVICES | |
| | CLAIM L488533 | |
| | CLAIM L488533AL | |

CHECK TOTAL.................... $*********19,000.00
Page 53

PLAINTIFF'S ORIGINAL PETITION

# EXHIBIT 3

CAUSE NO. 02-3254

| | | |
|---|---|---|
| AYLOIS COOK and STACEY WYATT | § | IN THE 259TH JUDICIAL |
| | § | |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| NHAN DUONG HA and JEFFREY DON | § | |
| PIPPIN | § | JONES COUNTY, TEXAS |

## AGREED ORDER OF DISMISSAL WITH PREJUDICE

On this date came to be considered the above-entitled and numbered cause. The parties appeared by and through their attorneys and announced to the Court that all matters in controversy have been fully and finally resolved and settled. The parties jointly moved that the above-entitled and numbered cause be dismissed with prejudice to refiling in any form, with costs taxed to the party incurring same. The Court finds that all matters in controversy have been fully and finally resolved and settled, and that the above-entitled and numbered action should be dismissed with prejudice to refiling in any form, with costs taxed to the party incurring same.

It is, **THEREFORE, ORDERED, ADJUDGED AND DECREED** that the above-entitled and numbered cause be, and hereby is, dismissed with prejudice to refiling in any form, with costs taxed to the party incurring same.

All other requested relief not expressly granted herein is denied.

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

Agreed Order of Dismissal with Prejudice      Page 1 of 2

**EXHIBIT**

**3**

APPROVED AS TO FORM AND SUBSTANCE:

BURT BURNETT
State Bar No. 00787171
MAJD GHANAYEM
State Bar No. 24078556
**BURNETT LAW FIRM**
P.O. Box 1521
Abilene, TX 79604
PH: (325) 673-4357
FX: (325) 428-0428

**ATTORNEYS FOR PLAINTIFFS**


**GREG ALLEN**
State Bar No. 01033350
**ALLEN LAW FIRM**
P.O. Box 700
Abilene, Texas 79604
PH: (325) 437-2424
FX: (325) 437-3837

**ATTORNEY FOR DEFENDANT**

# EXHIBIT 4

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Burt** | **Lee** | **Burnett** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: NORTHERN DISTRICT OF TEXAS | | |
| Case number (if known) | **17-42678-11** | |

☐ Check if this is an amended filing

## Official Form 107

## Statement of Financial Affairs for Individuals Filing for Bankruptcy    04/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

1. **What is your current marital status?**
   ☑ Married
   ☐ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**
   ☑ No
   ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?**
   (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

   ☐ No
   ☑ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).



EXHIBIT
4

Debtor 1 __Burt Lee Burnett__     Case number (if known) __17-42678-11__

## Part 2:  Explain the Sources of Your Income

**4.  Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☑ Yes. Fill in the details.

|  | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
|  | Sources of income<br>Check all that apply. | Gross income<br>(before deductions<br>and exclusions | Sources of income<br>Check all that apply. | Gross income<br>(before deductions<br>and exclusions |
| **From January 1 of the current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips | Unknown | ☐ Wages, commissions, bonuses, tips |  |
|  | ☑ Operating a business |  | ☐ Operating a business |  |
| **For the last calendar year:**<br>(January 1 to December 31, __2016__ )<br><sub>YYYY</sub> | ☐ Wages, commissions, bonuses, tips | Unknown | ☐ Wages, commissions, bonuses, tips |  |
|  | ☑ Operating a business |  | ☐ Operating a business |  |
| **For the calendar year before that:**<br>(January 1 to December 31, __2015__ )<br><sub>YYYY</sub> | ☐ Wages, commissions, bonuses, tips | $567,416.00 | ☐ Wages, commissions, bonuses, tips |  |
|  | ☑ Operating a business |  | ☐ Operating a business |  |

**5.  Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of other income are alimony; child support; Social Security; unemployment; and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are in a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
☑ Yes. Fill in the details.

|  | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
|  | Sources of income<br>Describe below. | Gross income<br>from each source<br>(before deductions<br>and exclusions | Sources of income<br>Describe below. | Gross income<br>from each source<br>(before deductions<br>and exclusions |
| **From January 1 of the current year until the date you filed for bankruptcy:** | To be provided |  |  |  |
| **For the last calendar year:**<br>(January 1 to December 31, __2016__ )<br><sub>YYYY</sub> | To be provided |  |  |  |
| **For the calendar year before that:**<br>(January 1 to December 31, __2015__ )<br><sub>YYYY</sub> | Capital Gain | $21,258.00 |  |  |
|  | IRA Distribution | $35,400.00 |  |  |
|  | Qualified Dividends | $6,368.00 |  |  |

Debtor 1   **Burt Lee Burnett**                                    Case number (if known)   **17-42678-11**

---

| **Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy** |
|---|---|

**6.   Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☑ No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.**   *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?

☑ No.   Go to line 7.

☐ Yes.   List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor.   Do not include payments for domestic support obligations, such as child support and alimony.   Also, do not include payments to an attorney for this bankruptcy case.

\* Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No.   Go to line 7.

☐ Yes.   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor.   Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

**7.   Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor.  11 U.S.C. § 101.  Include payments for domestic support obligations such as child support and alimony.

☑ No
☐ Yes.   List all payments to an insider.

**8.   Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

☑ No
☐ Yes.   List all payments that benefited an insider.

Debtor 1  **Burt Lee Burnett**                                    Case number (if known)  **17-42678-11**

| Part 4: | Identify Legal Actions, Repossessions, and Foreclosures |
|---|---|

9.  **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
    List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

    ☐ No
    ☑ Yes. Fill in the details.

| Case title | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Joseph E. Taylor and Charles Taylor, Jr. vs. Burt Burnett and the Burnett Law Firm, PLLC** <br><br> Case number **49687-A** | **Breach of Contract, Breach of Fiduciary Duty, Contructive Trust, Accounting, Conversion** | In the 42nd District Court of Taylor County, Texas <br> Court Name <br><br> Number   Street <br><br><br> City          State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| **Nancy Vaughn Edwards, Darlene Vaughn King, James Buster King vs. The Burnett Law Firm, PLLC and Burt L. Burnett, Individually** <br><br> Case number **49619-A** | **Professional Negligence, Gross Negligence, Breach of Contract, Breach of Fiduciary Duty, Fraud, Conversion, etc. in connection with Defendants' representation of Plaintiffs** | In the 42nd Judicial District of Taylor County, Texas <br> Court Name <br><br> Number   Street <br><br><br> City          State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| **Burt L. Burnett vs. Mondoia Bros, III, LLC dba Ragin Cajon Restaurants and Robert V. Hyatt, IV, Individually** <br><br> Case number **11069-D** | **Damage and Teft** | In the 350th District Court of Taylor County, Texas <br> Court Name <br><br> Number   Street <br><br><br> City          State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| **Britt Holdings, LLC dba Brewer Chiropractic Clinic vs. Laurie Lyles and Burt L. Burnett** <br><br> Case number **2017-001042-3** | **Breach of Contract, Fraud, Breach of Fiduciary Duty, Conversion & Theft, Damages** | In the County Court of Law No. 3 Tarrant County Texas <br> Court Name <br><br> Number   Street <br><br><br> City          State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |

Debtor 1    **Burt Lee Burnett**              Case number (if known)   **17-42678-11**

| Case title | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Aylois Cook vs. Burt Lee Burnett and the Burnett Law Firm** | | **350th District Court, Taylor County, Texas** <br> Court Name <br> **300 Oak Street** <br> Number   Street <br> **Suite 404** <br><br> **Abilene**    **TX**    **79602** <br> City      State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case number **11034-D** | | | |

| Case title | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Gary Peak vs. Burt Lee Burnett and the Burnett Law Firm** | **Breach of Contract for alleged unpaid attorney referral fee** | Court Name <br> Number   Street <br><br> City      State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case number | | | |

| Case title | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Burt Lee Burnett vs. Mike Barker** | **Barker case-Breach of contract, fraud and conversion in connection with the construction of Plaintiffs barn** | Court Name <br> Number   Street <br><br> City      State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case number | | | |

| Case title | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **1420 Med, LLC vs. Burt L. Burnett** | **Breach of Contract** | **In the County Court at Law No. 1 Dallas County, Texas** <br> Court Name <br> Number   Street <br><br> City      State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case number **CC-17-01381-A** | | | |

| Case title | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Ravi Rayasam and Musa Ghanayem, Individually and Ghanayem and Rayasam, LLC vs. The Burnett Law Firm, PLLC and Burt L. Burnett, Indvidually** | | **350th District Court, Taylor County, Texas** <br> Court Name <br> **300 Oak Street** <br> Number   Street <br> **Suite 404** <br><br> **Abilene**    **TX**    **79602** <br> City      State    ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case number **11136-D** | | | |

Debtor 1    **Burt Lee Burnett**                                        Case number (if known)    **17-42678-11**

| Case title | Nature of the case | Court or agency | | | Status of the case |
|---|---|---|---|---|---|
| **Jody Montoya vs. The Burnett Law Firm, PLLC and Burt L. Burnett** | | **350th District Court, Taylor County, Texas** | | | ☑ Pending |
| | | Court Name | | | ☐ On appeal |
| Case number **11138-D** | | **300 Oak Street** | | | ☐ Concluded |
| | | Number   Street | | | |
| | | **Suite 404** | | | |
| | | **Abilene** | **TX** | **79602** | |
| | | City | State | ZIP Code | |

| Case title | Nature of the case | Court or agency | | | Status of the case |
|---|---|---|---|---|---|
| **Omar Thompson vs. The Burnett Law Firm, PLLC and Burt L. Burnett** | | **42 Judicial District Court, Taylor County Texas** | | | ☑ Pending |
| | | Court Name | | | ☐ On appeal |
| Case number **49742-A** | | **300 Oak Street** | | | ☐ Concluded |
| | | Number   Street | | | |
| | | **Suite 401** | | | |
| | | **Abilene** | **TX** | **79602** | |
| | | City | State | ZIP Code | |

| Case title | Nature of the case | Court or agency | | | Status of the case |
|---|---|---|---|---|---|
| **Jerry Tarr vs The Burnett Firm and Burt L. Burnett** | | **104th District Court, Taylor County, Texas** | | | ☑ Pending |
| | | Court Name | | | ☐ On appeal |
| Case number **27064-B** | | **300 Oak Street** | | | ☐ Concluded |
| | | Number   Street | | | |
| | | **Suite 402** | | | |
| | | **Abilene** | **TX** | **79602** | |
| | | City | State | ZIP Code | |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☑ No. Go to line 11.
☐ Yes. Fill in the information below.

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

☑ No
☐ Yes. Fill in the details.

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☑ No
☐ Yes

Debtor 1    **Burt Lee Burnett**                                          Case number (if known) **17-42678-11**

---

| Part 5: | **List Certain Gifts and Contributions** |

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☑ No
☐ Yes. Fill in the details for each gift.

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

☑ No
☐ Yes. Fill in the details for each gift or contribution.

---

| Part 6: | **List Certain Losses** |

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☐ No
☑ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss. Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|

**Majd stole Clients settlements**

---

| Part 7: | **List Certain Payments or Transfers** |

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**

Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required for your bankruptcy.

☑ No
☐ Yes. Fill in the details.

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**

Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**

Include both outright transfers and transfers made as security (such as granting a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☑ No
☐ Yes. Fill in the details.

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?**  (These are often called asset-protection devices.)

☑ No
☐ Yes. Fill in the details.

Debtor 1    **Burt Lee Burnett**                                     Case number (if known)  **17-42678-11**

| Part 8: | List Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units |
|---|---|

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**

Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☐ No
☑ Yes.  Fill in the details.

| | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| **First Bank of Texas**<br>Name of Financial Institution<br><br>Number    Street<br><br><br>City         State    ZIP Code | XXXX- 9  1  1  8 | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☑ Other  **IOLTA account** | 1/2017 | |

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

☑ No
☐ Yes.  Fill in the details.

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

☑ No
☐ Yes.  Fill in the details.

| Part 9: | Identify Property You Hold or Control for Someone Else |
|---|---|

23. **Do you hold or control any property that someone else owns?  Include any property you borrowed from, are storing for, or hold in trust for someone.**

☑ No
☐ Yes.  Fill in the details.

Debtor 1    **Burt Lee Burnett**                                    Case number (if known)  **17-42678-11**

---

| Part 10: | **Give Details About Environmental Information** |
|---|---|

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substance, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar item.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

  ☑ No
  ☐ Yes. Fill in the details.

25. **Have you notified any governmental unit of any release of hazardous material?**
  ☑ No
  ☐ Yes. Fill in the details.

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

  ☑ No
  ☐ Yes. Fill in the details.

---

| Part 11: | **Give Details About Your Business or Connections to Any Business** |
|---|---|

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

  ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
  ☑ A member of a limited liability company (LLC) or limited liability partnership (LLP)
  ☐ A partner in a partnership
  ☐ An officer, director, or managing executive of a corporation
  ☐ An owner of at least 5% of the voting or equity securities of a corporation

  ☐ No. None of the above applies. Go to Part 12.
  ☑ Yes. Check all that apply above and fill in the details below for each business.

| | Describe the nature of the business | Employer Identification number |
|---|---|---|
| **The Burnett Law Firm, PLLC** <br> Business Name | Law Firm | Do not include Social Security number or ITIN. |
| **342 Cedar Street** <br> Number       Street | Name of accountant or bookkeeper <br> **Les Richards** | EIN: __4__ __7__ – __1__ __4__ __7__ __7__ __1__ __7__ __3__ |
| | | Dates business existed |
| | | From  **11/28/2012**    To    **Present** |
| **Abilene**          **TX**    **79601** <br> City          State   ZIP Code | | |

Debtor 1    **Burt Lee Burnett**

Case number (if known)   **17-42678-11**

---

**Team Burnett Cattle Company, LLC**
Business Name

**342 Cedar Street**
Number   Street

**Abilene**    **TX**   **79601**
City    State   ZIP Code

Describe the nature of the business
**Cattle and Ranching**

Name of accountant or bookkeeper
**Les Richards**

Employer Identification number
Do not include Social Security number or ITIN.

EIN: **4**   **6** – **1**   **4**   **7**   **1**   **9**   **8**   **8**

Dates business existed

From   **11/28/2012**    To   **Present**

---

**Corporate Pay Solutions, LLC**
Business Name

**342 Cedar Street**
Number   Street

**Abilene**    **TX**   **79601**
City    State   ZIP Code

Describe the nature of the business
**Sell prepaid debit cards**

Name of accountant or bookkeeper
**Les Richards**

Employer Identification number
Do not include Social Security number or ITIN.

EIN: **4**   **7** – **2**   **2**   **4**   **1**   **1**   **8**   **8**

Dates business existed

From   **11/3/2014**    To   **2015**

---

**Lucrative Living Legacy, LLC**
Business Name

**342 Cedar Street**
Number   Street

**Abilene**    **TX**   **79601-6722**
City    State   ZIP Code

Describe the nature of the business
**Sell prepaid debit cards**

Name of accountant or bookkeeper
**Les Richards**

Employer Identification number
Do not include Social Security number or ITIN.

EIN: **4**   **7** – **2**   **2**   **5**   **6**   **9**   **9**   **5**

Dates business existed

From   **11/4/2014**    To   **2015**

---

**School Kids Nutrition Consultans, Inc**
Business Name

**818 Greenside**
Number   Street

**Baird**    **TX**   **79504**
City    State   ZIP Code

Describe the nature of the business
**Nutritional consulting services**

Name of accountant or bookkeeper
**Les Richards**

Employer Identification number
Do not include Social Security number or ITIN.

EIN: **2**   **6** – **4**   **1**   **2**   **5**   **7**   **0**   **0**

Dates business existed

From   **1/26/2009**    To

---

**Aerial Vision Technology, Inc.**
Business Name

**24 Winged Foot Circle**
Number   Street

**Abilene**    **TX**   **79606**
City    State   ZIP Code

Describe the nature of the business
**Business has been disolved**

Name of accountant or bookkeeper
**Les Richard**

Employer Identification number
Do not include Social Security number or ITIN.

EIN: **2**   **6** – **4**   **4**   **8**   **6**   **7**   **9**   **9**

Dates business existed

From   **3/18/2009**    To

---

Debtor 1    **Burt Lee Burnett**                                            Case number (if known)  **17-42678-11**

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business?  Include all financial institutions, creditors, or other parties.**

☐ No
☑ Yes.  Fill in the details below.

| | Date issued |
|---|---|
| **First Bank Texas** | **03/01/2015** |
| Name | |

Number    Street

City                    State    ZIP Code

## Part 12:    Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that answers are true and correct.  I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

X  **/s/ Burt Lee Burnett**                     X  _____
Burt Lee Burnett, Debtor 1                        Signature of Debtor 2

Date    **07/28/2017**                            Date  _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107)*?

☑ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?

☑ No
☐ Yes. Name of person _____    Attach the  *Bankruptcy Petition Preparer's Notice, Declaration, and Signature*  (Official Form 119).

# EXHIBIT 5

**KINSALE INSURANCE COMPANY**
2221 Edward Holland Drive, Suite 600
Richmond, Virginia 23230

## LAWYERS' PROFESSIONAL LIABILITY DECLARATIONS

| | |
|---|---|
| Policy Number: | 0100035982-0 |
| Producer Number: | 28402 |
| Name and Address: | NSM Insurance /Pat Moore Insurance |
| | 16301 Quorum Drive, Suite 100A |
| | Addison, TX 75001 |

| | |
|---|---|
| **NAMED INSURED:** | The Burnett Law Firm PLLC |
| **MAILING ADDRESS:** | 342 Cedar Street |
| | Abilene, TX 79601 |
| **POLICY PERIOD:** | FROM 02/20/2016 TO 02/20/2017 at 12:01 AM at the address of the named insured as shown above. |

| RETROACTIVE DATE | |
|---|---|
| Retroactive Date: | 11/24/2012 at 12:01 AM at the address of the named insured as shown above. |

| LIMITS OF INSURANCE | |
|---|---|
| Each Claim | $2,000,000 |
| Aggregate Limit | $2,000,000 |

| DEDUCTIBLE(S) | |
|---|---|
| Each Claim | $25,000 |

| PREMIUM AND COMPANY FEES | |
|---|---|
| Premium: | $14,000 |
| Company Fee: | $100 |
| Total (of Premium and Company Fee): | $14,100 |

| OPTIONAL EXTENDED REPORTING PERIOD | |
|---|---|
| Period (in Months) | Percentage of Policy Premium |
| 12 | 100% |
| 24 | 150% |
| 36 | 175% |
| See SECTION IX of the policy for details. | |

| FORMS AND ENDORSEMENTS |
|---|
| Refer to ADF4001, SCHEDULE OF FORMS |



EXHIBIT
5

LAW1000 0110

## NOTICE—WHERE TO REPORT A CLAIM

It is important that losses, claims or incidents (if incident reporting is permitted under the Policy) are reported in writing and directly to Kinsale Insurance Company. Reporting losses, claims or incidents to an insurance agent or broker is not notice to Kinsale Insurance Company. Failure to report directly to Kinsale Insurance Company may jeopardize coverage under the Policy. Kinsale Insurance Company can be contacted easily and quickly by e-mail, fax or U.S. mail.

**By E-mail:**
Newclaimnotices@kinsaleins.com

**By FAX:**
1-804-482-2762, Attention Claims Department

or

**By Mail:**
Kinsale Insurance Company
Attention: Claims Department
P. O. Box 17008
Richmond, Virginia 23226

**Street Address:**
2221 Edward Holland Drive, Suite 600
Richmond, Virginia 23230

# SCHEDULE OF FORMS

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|---|
| Additional Premium:<br>$0 | | Return Premium:<br>$0 | |

LAW1000-0110 - Lawyers' Professional Liability Declarations
ADF9013-0815 - Notice - Where To Report A Claim
ADF4001-0110 - Schedule of Forms
LAW0001-0415 - Lawyers Professional Liability Policy
PRO2005-0114 - Awareness Provision Endorsement
PRO2011-0515 - Privacy Breach Expense Reimbursement Endorsement
PRO4002-0310 - Bi-Lateral Extended Reporting Period
ADF3013-0611 - Exclusion - Collection of Personal Identification Information
PRO3001-0510 - Exclusion of Designated Person or Entity
PRO3004-0311 - Exclusion - Prior or Pending Litigation
PRO3005-1011 - Exclusion - Claims Arising Out Of Fee Disputes
PRO3015-0515 - Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability
PRO3014-0514 - Exclusion - Referrals
ADF9004-0110 - Signature Endorsement
ADF9009-0110 - U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders
ADF9003-0110 - Kinsale Texas Important Notice

# LAWYERS
# PROFESSIONAL LIABILITY POLICY

*THIS IS A CLAIMS MADE AND REPORTED POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND BE REPORTED IN WRITING TO THE COMPANY WITHIN THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DAMAGES AND DEFENSE COSTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.*

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS (SECTION II).**

In consideration of payment of the premium, in reliance upon all statements made and information furnished to us, including the statements and information provided in the "application" which are made part of this Policy, and subject to all the terms, conditions and limitations of this Policy and its endorsements, we agree with you as follows:

## SECTION I: COVERAGE

### A. Insuring Agreement

1. We will pay, in excess of the Deductible shown in the Declarations, those sums any "insured" becomes legally obligated to pay as "damages" and "defense costs" because of a "claim" for a "wrongful act" arising out of "professional services" rendered or that should have been rendered.

2. This insurance applies to "claims" for "wrongful acts" only if:

   a. Prior to the effective date of this Policy, no "insured" had knowledge of any "wrongful act" that could reasonably give rise to a "claim" under this Policy;

   b. No common fact, circumstance, situation, transaction, event, service, advice or decision involved in a "professional service" was reported as a "claim" or potential claim under any prior policy or disclosed in the application for this Policy or any previous insurance policy for which you have applied;

   c. The "damages" arise out of a "professional service" rendered on or subsequent to the Policy Retroactive Date specified in the Declarations and before the end of this "policy period"; and

   d. The "claim" against you is first made to you during this "policy period" and is reported to us in writing during this "policy period" or in accordance with an Extended Reporting Period if applicable.

### B. Defense and Settlement

1. We will have the right and duty to defend the "insured" against a "claim" seeking those "damages". However, we will have no duty to defend the "insured" against any "claim" seeking "damages" for "professional services" to which this insurance does not apply. We may, at our discretion, investigate any "claim" that may result.

2. We have the right to negotiate the settlement of any "claim", whether within or above the deductible, and we will seek your written consent to any settlement. If the "named insured" refuses to consent to any settlement we recommend that is acceptable to the claimant, our Limit of Insurance for such "claim" is limited to the amount in excess of the Deductible we would have paid as "damages" had you consented to settlement at that time plus any "defense costs" covered by this Policy incurred up to the date of your refusal to settle.

3. The amount we will pay for "damages" or "defense costs" is limited to and shall reduce the applicable Limit of Insurance. Our right and duty to defend or settle ends when we have used up the applicable Limit of Insurance in the payment of "damages" or "defense costs". In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.

C.  **Multiple Claims**

1.  All "claims" for "damages" or "defense costs" arising out of "professional services" to the same person or entity will be deemed to have been made on the date on which the first of all such logically or causally connected "claims" is made against any "insured." For the purposes of this insurance, all "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision, will be considered to be one "wrongful act" and will be deemed to have taken place at the time the first of these related "wrongful acts" took place. All "claims" based upon such logically or causally connected "wrongful acts" shall be deemed to constitute a single "claim" and be subject to a single each claim Limit of Insurance.

## SECTION II – DEFINITIONS

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

A.  "Application" means any application, supplemental application or renewal application, and any other information furnished to us for this Policy and for all previous policies issued by us to you providing uninterrupted coverage until the effective date of this Policy.

B.  "Bodily injury" means emotional distress, disease, physical or mental injury, mental anguish, mental tension, pain and suffering, shock, sickness or death of any person;

C.  "Claim" means a written demand for monetary "damages" arising out of a "professional service" made against the "insured".

D.  "Damages" means any compensatory amount any "insured" is legally obligated to pay as a result of a "claim" to which this Policy applies, including judgments, awards and settlements.

"Damages" shall not include, and we will not pay "damages" or "defense costs" for:

1.  Any fine, penalty, or sanction of any type against any "insured";
2.  Equitable or non-pecuniary relief;
3.  Any matter or amount that is uninsurable by law;
4.  Money payable by any "insured" for or for the return of, royalties, commissions, fees, other forms of compensation, taxes, or profits; or
5.  Punitive or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

E.  "Defense costs" means:
1.  Attorney's fees, expert witness fees and other fees and costs, including pre-judgment and post-judgment interest paid by us or by you with our prior written consent, in the investigation and defense of covered "claims";
2.  All other fees, costs and expenses resulting from the investigation, defense, settlement and appeal of a covered "claim" as authorized by us;
3.  Premiums for bonds required as a result of a covered "claim", including bonds to release attachments, but only for bond amounts not exceeding the applicable Limit of Insurance.

If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer. Post-judgment interest includes interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

"Defense costs" shall not include the salaries and wages of any of our employees or your employees, officers or directors.

F.  "Family member" means any "insured's" parents, adoptive parents, step-parents, grandparents, children, step-children, adoptive children, grandchildren, siblings, step-siblings, brothers-in-law, sisters-in-law, daughters-in-law, sons-in-law, mothers-in-law, fathers-in-law or any current or former spouse.

G. "Insured" means the "named insured" and:

1. Any past, present or future principal, partner, officer, director, member, manager, employee, stockholder, or trustee of the "named insured" but only with respect to "professional services" rendered on behalf of the "named insured" or a "predecessor firm";

2. Any past, present or future non-lawyer employee or member of the "named insured" but only while acting on behalf of the "named insured" or on behalf of a "predecessor firm";

3. The heirs, executors, administrators and legal representatives of each "insured", as defined in 1. above, in the event of death, incompetency or bankruptcy of such "insured", but only for liability arising out of "professional services" rendered by the "insured" prior to such "insured's" death, incompetency or bankruptcy;

4. Any "of counsel" or independent contractor but only for "claims" for "professional services" rendered on behalf of the "named insured" with your direct supervision and pursuant to a written contract with the "named insured";

H. "Minimum earned premium" means twenty-five percent (25%) of the combined sum of the total policy premium listed in the Declarations and any premium adjustments by endorsement.

I. "Named insured" means the entity or person listed in the Declarations.

J. "Of counsel" means:

1. Any lawyer, limited liability professional corporation, professional corporation identified as "of counsel" on the "application" for this Policy; or

2. Any lawyer who is an employee of a limited liability professional corporation or professional corporation identified as "of counsel" on the "application" for this Policy.

K. "Personal injury offense" means one or more of the following offenses:
1. Oral or written publication of material that slanders or libels a person or organization; or
2. Oral or written publication of material that violates a person's right of privacy; or
3. False arrest, detention or imprisonment; or
4. Wrongful entry into or eviction of a person from a room, dwelling or premises that the person occupies.

L. "Policy period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to the terms of this Policy.

M. "Predecessor firm" means any legal entity providing "professional services" to whose financial assets and liabilities the "named insured" is the majority successor in interest prior to the effective date of this Policy.

N. "Professional services" means legal services rendered by or on behalf of the "named insured" or any "predecessor firm" for others:
1. As a licensed lawyer in good standing, arbitrator, mediator or notary public;
2. As an administrator, conservator, executor, guardian, trustee or any other similar fiduciary capacity, provided that such services are rendered in the course of the "insured's" activities as a lawyer.

O. "Property damage" means physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured. Tangible property includes electronic data which means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

P. "Wrongful act" means any actual or alleged negligent act, error, omission.

### SECTION III – EXCLUSIONS

This Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged:

A. "Professional services":

   1.  For any other "insured" under this Policy;

   2.  For any "family member";

   3.  For any firm, organization, entity or trust which controls, manages, owns or operates, any "insured";

   4.  For any firm, organization, entity or trust not named in the Declarations in which any "insured" or any "family member":

      a.  Has or had any ownership interest;

      b.  Is or was a director, officer, member, partner, principal, shareholder or employee; or,

      c.  At any time managed, operated or exercised direct or indirect control;

B. "Professional services" in the capacity as an elected public official or as an employee of a governmental body, subdivision, or agency thereof;

C. Rights, duties, or liabilities of others, which any "insured" assumes under any contract or agreement, unless the "insured" would have been held legally liable in the absence of such contract or agreement;

D. Commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money, premium or tax;

E. "Bodily injury";

F. "Property damage";

G. "Personal injury offense";

H. Violation of any of the following:

   1.  The Securities Act of 1933 or the Securities Exchange Act of 1934;

   2.  The Investment Company Act of 1940 or the Investment Advisers Act of 1940;

   3.  The Trust Indenture Act of 1939;

   4.  The Public Utility Holding Company Act of 1935;

   5.  The Racketeer Influenced and Corrupt Organization Act 18 USC Sections 1961; or

   6.  Any state Blue Sky laws, or any other law, rule or regulation involving the offer, issuance, purchase or sale of securities;

I. Activities performed in a fiduciary capacity with respect to any pension, profit sharing, health and welfare, or any other employee benefit plan or trust sponsored, established, funded, or managed by any "insured" for its own employees, including any "claim" under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant the Employee Retirement Income Security Act of 1974;

J. Coercion, defamation, demotion, discrimination, discipline, evaluation, failure or refusal to hire or employ, harassment or humiliation, reassignment, or termination of employment or any other employment-related practices, policies, acts, errors or omissions;

K. Discrimination against any person or group of persons including discrimination based on age, color, race, sex, creed, national origin, marital status, handicap, physical disability or sexual preference;

L. Notarization of a signature without the physical appearance of the signatory before the "insured";

M. Criminal act;

N. Fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature. However, if such allegations involve a "claim" to which this insurance otherwise applies, we shall defend such allegations against the "insured" until a judgment or other final adjudication establishes, or such "insured" admits, that the act, error, omission or offense was committed, or personally acquiesced in, by such "insured";

**O.** Rendering of any investment advice;

**P.** Infringement of copyright, patent, trademark, service mark, right of publicity, slogan, trade dress, trade secret or other intellectual property rights; or false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition; or violation of any law, statute or ordinance of any federal, state or municipal government or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes;

**Q.** Anti-trust violation or any other unfair or anti-competitive trade practices;

**R.** Payment, division or apportionment or return of any fees;

**S.** Violation of The Telephone Consumer Protection Act (TCPA), The CAN-SPAM Act of 2003, the Fair Credit Reporting Act (FCRA), the Fair and Accurate Credit Transaction Act (FACTA) and any amendments to such law; and including violation of any other statute, ordinance or regulation that limits or prohibits the printing, dissemination, disposal, collecting, recording, transmitting, communicating, sending or distribution of any material or information.

**T.** Discharge, dispersal, seepage, migration, release or escape of asbestos, lead, mold or "pollutants" at any time; or any request, demand or order that any "insured" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of asbestos, lead, mold or "pollutants"; or any "claim" by or on behalf of a governmental authority for "damages" because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of asbestos, lead, mold or "pollutants".

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, restored, reconditioned or reclaimed.

**U.** Act, error or omission of any individual or entity with whom the "insured" shares common office space or common office facilities and who is not an "insured" under this Policy;

**V.** Rendering of any services as a title insurance agent or abstractor.

## SECTION IV– LIMITS OF INSURANCE AND DEDUCTIBLE

Regardless of the number of "insureds" under this Policy or "claims" made, our liability is limited as follows:

**A.** The LIMIT OF INSURANCE-EACH CLAIM listed in the Declarations is our maximum liability for "damages" and "defense costs" for each covered "claim" under this Policy.

**B.** All "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, will be considered to be one "wrongful act". All "claims" based upon such logically or causally connected "wrongful acts" shall be deemed to constitute a single "claim" and be subject to a single EACH CLAIM LIMIT OF INSURANCE.

**C.** The LIMIT OF INSURANCE-AGGREGATE is our maximum liability for "damages" and "defense costs" under this Policy, subject to the LIMIT OF INSURANCE-EACH CLAIM.

**D.** If two or more insurance Policies issued by us or any of our affiliated companies apply to the same "claim", the most we shall liable for under all such policies is the Limit of Insurance of that Policy which has the highest applicable Limit of Insurance. If the Limit of Insurance on each Policy is the same, only one limit will apply. This provision will not apply to any insurance policy issued by us or an affiliated company to specifically apply as excess insurance over this Policy.

**E.** We shall be liable only for those amounts payable as "damages" and "defense costs" incurred in the defense of a "claim" or suit which are in excess of the Deductible listed in the Declarations. The Deductible listed in the Declarations applies to "damages" and "defense costs" for each "claim" and shall be paid by you. If we opt to advance payment of all or part of the Deductible, you shall reimburse us within thirty (30) days of our request for reimbursement. The Deductible amount reduces the Limit of Insurance payable under this Policy.

## SECTION V – TERRITORY

This Policy applies only to "wrongful acts" arising out of your "professional services" rendered by any "insured" anywhere in the world; provided, however, that any such "claim" must be brought in the United States, its territories or possessions, or Canada.

## SECTION VI – WHEN THERE IS A CLAIM

The "insured" shall immediately provide us with written notice of any "claim".  You  and any other involved "insured" shall immediately provide us with any demands, notices, summons or other documents received in connection with the "claim", authorize us to obtain records and other information, and cooperate with us in the investigation, defense or settlement of the claim.

All "insureds" shall assist us in the enforcement of any right against any person or organization that may be liable to any "insured" because of "damages" or "defense costs" to which this insurance may also apply.

No "insured" will make a payment, accept liability, assume any obligation or incur any expense without first obtaining our approval, except at that "insured's" own cost.

## SECTION VII – GENERAL CONDITIONS

A. Bankruptcy

Bankruptcy or insolvency of any "insured" or of any "insured's" estate will not relieve us of our obligations under this Policy.

B. Legal Action Against Us

1. No action may be brought against us unless there has been full compliance with all of the terms of this Policy and the ultimate amount of the "insured's" responsibility has been finally concluded either by a trial judgment against the "insureds" or by written agreement with the "insureds", all claimants, and us;

2. No person or organization has any right under this Policy to join us as party into any suit to determine the liability of any "insured".

C. Other Insurance

This insurance shall be excess over any other valid insurance, whether such insurance is considered contributory, excess, primary or otherwise, unless such insurance specifically applies in excess of this Policy.

D. Representations

By accepting this Policy, you agree that:

1. The "application", and all other information and statements provided to us are true, accurate and complete and that the "application" and all such information and statements are made part of this Policy;

2. The "application" and all other information and statements provided to us are representations and warranties made to us on behalf of all "insureds";

3. This Policy has been issued in reliance upon the truth and accuracy of those representations and warranties; and

4. Concealment, misrepresentation or fraud in the procurement of this Policy which, if known by us, would have led us to refuse to enter into this contract at its current terms, conditions or pricing, or to provide coverage for a "claim" hereunder, will be deemed material and this Policy shall be void.  In such an event, the Company shall have no obligation to return any portion of the premium.

E. Subrogation

If any "insured" has rights to recover all or part of any "damages" or "defense costs" that we have paid under this Policy, those rights are transferred to us. You and all other "insureds" must do nothing to harm these rights and will cooperate with us to enforce these rights.

F.   Named Insured Responsibilities

The "named insured" listed first in the Declarations of this Policy shall act on behalf of all "insureds" with respect to completing the "application" for this insurance, including representing the truth, accuracy and completeness of all information, giving or receiving notice of cancellation or non-renewal, paying premium or receiving unearned premium, paying the Deductible, consenting to the settlement of any "claim", agreeing to any changes in this Policy, and electing whether or not to purchase the Extended Reporting Period described in **SECTION IX – OPTIONAL EXTENDED REPORTING PERIODS.**

G.   Cancellation and Non-Renewal
   1.   Cancellation
      a.   The "named insured" listed first in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
      b.   We may cancel this policy by mailing or delivering to the "named insured" written notice of cancellation at least:
         i.   Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium or non-payment of Deductible; or
         ii.   Thirty (30) days before the effective date of cancellation if we cancel for any other reason.
      c.   We will mail or deliver our notice to the "named insured's" last mailing address known to us.
      d.   Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.
      e.   If this Policy is cancelled, we will send the "named insured" any refund due. If we cancel for reasons other than non-payment of premium, the refund will be pro rata. If we cancel due to non-payment of premium or if the "named insured" cancels for any reason, the refund may be less than pro rata and is subject to the "minimum earned premium". The cancellation will be effective even if we have not made or offered a refund.
      f.   If notice is mailed, proof of mailing will be sufficient proof of notice.

   2.   Non-Renewal
      a.   If we elect not to renew this policy, we shall mail written notice to the "named insured's" last mailing address known to us. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the "policy period".
      b.   If notice is mailed, proof of mailing will be sufficient proof of notice.

H.   Change In Exposure:  Mergers and Acquisitions or Change in Membership of the "Named Insured"

   1.   If, during the "policy period", any of the following events occur:

      a.   The acquisition of any "named insured", or a majority of its assets as reflected in that "named insured's" most recent audited consolidated financial statements , by another entity or the merger or consolidation of any "named insured" into or with another entity such that the "named insured" is not the surviving entity; or

      b.   The appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any "named insured";

      then coverage under this Policy will cease with respect to "professional services" rendered after such event. After any such event, this Policy may not be canceled by any "insured" and the entire premium for this Policy will be deemed fully earned.

   2.   If during the "policy period", any "named insured" acquires the majority of the assets of another entity as reflected in the other entity's most recent audited consolidated financial statements or acquires any organization by merger into or consolidation with the "named insured" no coverage shall be afforded under this Policy for any "claim" involving the assets acquired or the entity which is consolidated or merged with or acquired unless:

      a.   You provide written notice of such creation, acquisition, or merger within fifteen (15) days after the effective date thereof, but before Policy expiration, whichever is earlier; and

LAW0001 0415                                                                                           Page 7 of 10

b.  You provide us with all information that we may deem necessary; and

c.  You accept any terms, conditions, exclusions and pay any additional premium charged; and

d.  We, at our sole discretion, specifically agree in writing to provide such coverage.

If we agree to provide such coverage, it shall apply only to "professional services" rendered after the effective date of such transaction and shall apply as excess of any other valid and collectible insurance.

3.  If during the "policy period", the number of lawyers qualifying as "insureds" on the effective date of this Policy is increased by 50% or more, the "named insured" shall report such increase in writing to the Company within forty-five (45) days of the increase or before the expiration date of the Policy, whichever is earlier. The "named insured" shall provide any additional information the Company requires and the Company shall have the right to charge an additional premium.

I.  Fraudulent Acts

If any "insured" commits fraud in connection with any "claim" submitted to the Company, this insurance shall become void from the date such fraudulent "claim" is submitted. In such an event, the Company shall have no obligation to return any portion of the premium.

J.  Assignment of Interest Limitation

Assignment of interest by you under this Policy shall not bind us unless we agree and endorse the assignment onto this Policy.

K.  Service Of Suit

In the event of the failure of the Company to pay any amount claimed to be due under this Policy, the Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada. All matters arising under this Policy shall be determined in accordance with the choice of law rules of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

Service of process in any such suit may be made upon the President and Chief Executive Officer of the Company or his designee at the address shown on the Declarations of this Policy. In any suit instituted upon this contract and against the President and Chief Executive Officer of the Company or his designee, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. The President and Chief Executive Officer of the Company or his designee are authorized and directed to accept service of process.

Pursuant to any statute of any state, territory or district of the United States of America, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "insured" or any beneficiary under this Policy arising out of this contract of insurance. The Company designates the above-named as the person to whom said officer is authorized to mail such process or a true copy of such process.

## SECTION VIII – ADDITIONAL TIME IN WHICH TO REPORT CLAIMS FIRST MADE AT THE END OF THE POLICY PERIOD

If a "claim" is first made against any "insured" during the last fourteen (14) calendar days of the "policy period", such "claim" will be treated as if it had been reported to the Company during this "policy period" if:

A.  The "insureds" demonstrate reasonable efforts to report such "claim" to us; and

B.  The "insureds" provides us with written notice of such "claim" no later than thirty (30) calendar days after the end of the "policy period".

This **SECTION VIII** does not apply to any "claim" for "damages" or "defense costs" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy. This applies whether that other insurance is issued by the Company or any other insurer, and to any "claim" for "damages" or "defense costs" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for the failure of any "insured" to comply with the terms and conditions of that other insurance.

## SECTION IX –OPTIONAL EXTENDED REPORTING PERIOD

If this Policy is cancelled or non-renewed by us for reasons other than non-payment of premium or Deductible, non-compliance with the Policy's terms and conditions, or for misrepresentation or fraud, you shall have the right to purchase an Extended Reporting Period as described below:

A.  The "named insured" shall have the right to purchase an Extended Reporting Period during which you may report to us a "claim" that is first made against any "insured" during such Extended Reporting Period and that results from a "wrongful act" arising out of your "professional service" rendered subsequent to the Policy Retroactive Date and before the end of the "policy period" and to which this Policy applies;

B.  The Extended Reporting Period is provided by endorsement for an additional premium computed as a percentage of the combined sum of the policy premium listed in the Declarations and any premium adjustments by endorsement, not including a cancellation endorsement if applicable. The premium for the Extended Reporting Period is deemed fully earned and is non-refundable the first day the Extended Reporting Period is effective. Once in effect, the Extended Reporting Period may not be cancelled by you or us;

C.  You must provide us a written request for the Extended Reporting Period endorsement and pay any premium due within thirty (30) days after the end of the "policy period". The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

For purposes of the Extended Reporting Period, any change to this Policy's premiums, limits or terms or to the premium, limits or terms of a renewal policy do not constitute a refusal to renew.

The Extended Reporting Period shall be subject to all the terms and conditions of this Policy and shall apply to "claims" first made against any "insured" and reported to us during the Extended Reporting Period and that result from a "wrongful act" arising out of your "professional service" rendered subsequent to the Retroactive Date and before the end of the "policy period".

The Limit of Insurance for "damages" and "defense costs" with respect to "claims" made during the Extended Reporting Period is considered part of, and not in addition to, the Limit of Insurance referenced in **SECTION IV—LIMITS OF INSURANCE AND DEDUCTIBLE.** The fact that the period during which "claims" may be first made and reported to us under this Policy is extended by activation of the Extended Reporting Period does not in any way increase the available Limits of Insurance of this Policy.

If purchased, the Extended Reporting Period does not apply to any "claim" for "damages" or "defense costs" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy. This applies whether that other insurance is issued by the Company or any other insurer, and to any "claim" for "damages" or "defense costs" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for the failure of any "insured" to comply with the terms and conditions of that other insurance.

## SECTION X—BINDING ARBITRATION

All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a "named insured", an "insured", an additional insured or, the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding Arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association. The Arbitration shall be before a

panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this Policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator. The American Arbitration Association shall decide any disputes concerning the selection of the Arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AWARENESS PROVISION ENDORSEMENT

| Attached To and Forming Part of Policy 0100035982-0 | Effective Date of Endorsement 02/20/2016 12:01AM at the Named Insured address shown on the Declarations | Named Insured The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium: $0 | Return Premium: $0 | |

This endorsement modifies insurance provided under the following:

**ALL COVERAGE FORMS**

SECTION VI – WHEN THERE IS A CLAIM, is amended by adding the following:

If, during this "policy period", an "insured" first becomes aware of a "wrongful act", incident or circumstance that may result in a "claim" against that "insured", then that "insured" may provide written notice to us about that "wrongful act", incident or circumstance. If such notice is received by us during the "policy period", then any "claim" subsequently made against that "insured" resulting from that "wrongful act", incident or circumstance shall be deemed, for the purposes of this insurance, to have been made on the date such written notice was received by us.

If an "insured" notifies us of a "wrongful act", incident or circumstance which may result in a "claim", such notice must include:

1. a description of the "wrongful act", incident or circumstance including the date and where it occurred;
2. the names and addresses of any persons involved and any witnesses;
3. the nature and location of any damage that has or may result from the "wrongful act", incident or circumstance; and
4. why that "insured" believes the "wrongful act", incident or circumstance may result in a "claim".

This provision shall not apply to reporting permitted during any Extended Reporting Period.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PRIVACY BREACH EXPENSE REIMBURSEMENT ENDORSEMENT

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium:<br>    $0 | Return Premium:<br>    $0 | |

This endorsement modifies insurance provided under the following:

ALL COVERAGE FORMS

| SCHEDULE | |
|---|---|
| $1,000 | Each Privacy Breach Deductible |
| $15,000 | Privacy Breach Response Expenses Aggregate Limit |

A.  **SECTION I- COVERAGES** is amended with the addition of the following:

We will reimburse you, in excess of the Deductible shown in the Schedule above, up to the amount of Privacy Breach Response Expenses Aggregate Limit shown in the Schedule above for "privacy breach response expenses" you incur resulting directly from a "privacy breach".

In order to be reimbursed by us under the coverage afforded by this endorsement, you must:

1. Incur and pay the "privacy breach response expenses"; and

2. Report such expenses to us with supporting documentation,

after the beginning date of the "policy period" and before the end of the "policy period".

No Extended Reporting Period applies to the coverage provided hereunder.

"Privacy breach response expenses" paid to you under this endorsement will reduce the limit of insurance stated in the Declarations as LIMITS OF INSURANCE-AGGREGATE.

B.  Solely as respects the coverage afforded by this endorsement, the following definitions are added:

1. "Privacy breach" means any actual breach of your computer network security resulting in the unauthorized release of your clients' confidential information collected by you, held within your computer network and which you are responsible for safeguarding.

2. "Privacy breach response expenses" means those expenses you incur:

a. to hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or

b. to comply with state or local privacy laws requiring that notification is given to individuals when the security, confidentiality, or integrity of their confidential information has been compromised.

C.  For the purposes of this endorsement, this policy's **EXCLUSION-ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY** shall not apply to reimbursement of covered "privacy breach response expenses" under this endorsement.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## BI-LATERAL EXTENDED REPORTING PERIOD

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium:<br>$0 | Return Premium:<br>$0 | |

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE**

**SECTION IX – OPTIONAL EXTENDED REPORTING PERIOD** is deleted and replaced by the following:

If this Policy is cancelled or non-renewed by you or us for reasons other than non-payment of premium or Deductible, non-compliance with the Policy's terms and conditions, or for misrepresentation or fraud, you shall have the right to purchase an Extended Reporting Period as described below:

   A.  The "named insured" shall have the right to purchase an Extended Reporting Period during which you may report to us a "claim" that is first made against any "insured" during such Extended Reporting Period and that results from a "wrongful act" arising out of your "professional service" rendered subsequent to the Policy Retroactive Date and before the end of the "policy period" and to which this Policy applies;

   B.  The Extended Reporting Period is provided by endorsement for an additional premium computed as a percentage of the combined sum of the policy premium listed in the Declarations and any premium adjustments by endorsement, not including a cancellation endorsement if applicable.  The premium for the Extended Reporting Period is deemed fully earned and is non-refundable the first day the Extended Reporting Period is effective.  Once in effect, the Extended Reporting Period may not be cancelled by you or us;

   C.  You must provide us a written request for the Extended Reporting Period endorsement and pay any premium due within thirty (30) days after the end of the "policy period". The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

The Extended Reporting Period shall be subject to all the terms and conditions of this Policy and shall apply to "claims" first made against any "insured" and reported to us during the Extended Reporting Period and that result from a "wrongful act" arising out of your "professional service" rendered subsequent to the Retroactive Date and before the end of the "policy period".

The Limit of Insurance for "damages" and "defense costs" with respect to "claims" made during the Extended Reporting Period is considered part of, and not in addition to, the Limit of Insurance referenced in **SECTION IV—LIMITS OF INSURANCE AND DEDUCTIBLE**.  The fact that the period during which "claims" may be first made and reported to us under this Policy is extended by activation of the Extended Reporting Period does not in any way increase the available Limits of Insurance of this Policy.

If purchased, the Extended Reporting Period does not apply to any "claim" for "damages" or "defense costs" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy.  This applies whether that other insurance is issued by the Company or any other insurer, and to any "claim" for "damages" or "defense costs" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for the failure of any "insured" to comply with the terms and conditions of that other insurance.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - COLLECTION OF PERSONAL IDENTIFICATION INFORMATION

| Attached To and Forming Part of Policy 0100035982-0 | Effective Date of Endorsement 02/20/2016 12:01AM at the Named Insured address shown on the Declarations | Named Insured The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium: $0 | Return Premium: $0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit", damages, defense costs, penalties or other expenses arising directly or indirectly out of, related to, or in any way involving any actual or alleged violation of the Song-Beverly Credit Card Act of 1971 (California Civil Code Section 1747-1748.7) or any other similar act, law or regulation regardless of where enacted.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF DESIGNATED PERSON OR ENTITY

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium:<br>$0 | Return Premium:<br>$0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

| SCHEDULE OF EXCLUDED PERSON OR ENTITY |
|---|
| Michelle Cadena |

The following exclusion is added to this Policy:

This Policy does not apply to any "professional services", "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving the person or entity named in the Schedule above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - PRIOR OR PENDING LITIGATION

| Attached To and Forming Part of Policy 0100035982-0 | Effective Date of Endorsement 02/20/2016 12:01AM at the Named Insured address shown on the Declarations | Named Insured The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium: $0 | Return Premium: $0 | |

This endorsement modifies insurance provided under the following:

**ALL COVERAGE FORMS**

| SCHEDULE | |
|---|---|
| Prior or Pending Litigation Date: | 02/20/2016 |

The following exclusion is added to this Policy:

This Policy does not apply to any "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving any litigation, proceeding or administrative hearing brought prior to or pending as of the Prior or Pending Litigation Date shown in the Schedule above, or to any future litigation, proceeding or administrative hearing based upon any such litigation, proceeding or administrative hearing or derived from the same facts or circumstances.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - CLAIMS ARISING OUT OF FEE DISPUTES

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium:<br>$0 | Return Premium:<br>$0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this Policy:

This Policy does not apply to any "wrongful act", "damages" or "defense costs" for any "claim" which arises as a counter-complaint, counter-claim, cross-claim or third party claim made by any past or present client of any "insured" as a defendant in any lawsuit which was filed against such client by any "insured" for the purposes of collecting any amount or portion of any fees which allegedly were owing.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

PRO3005 1011        Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium:<br>$0 | | Return Premium:<br>$0 |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**SECTION III – EXCLUSIONS** is amended by adding the following:

This Policy does not apply to any actual or alleged access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by any "insured" or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - REFERRALS

| Attached To and Forming Part of Policy<br>0100035982-0 | Effective Date of Endorsement<br>02/20/2016 12:01AM at the Named Insured<br>address shown on the Declarations | Named Insured<br>The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium:<br>$0 | Return Premium:<br>$0 | |

**This endorsement modifies insurance under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this Policy:

This Policy does not apply to any "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving any "insured's" referral of any client or prospective client to any person or entity other than an "insured".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SIGNATURE ENDORSEMENT

| Attached To and Forming Part of Policy 0100035982-0 | Effective Date of Endorsement 02/20/2016 12:01AM at the Named Insured address shown on the Declarations | Named Insured The Burnett Law Firm PLLC |
|---|---|---|
| Additional Premium: $0 | Return Premium: $0 | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

By signing and delivering this policy to you, we state that it is a valid contract when signed as below by our authorized representatives.

_____
Secretary

_____
President

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ADF9004 0110

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

## ADVISORY NOTICE TO POLICYHOLDERS

This Notice shall not be construed as part of your policy and no coverage is provided by this Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages your policy provides.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous Foreign Agents, Front Organizations, Terrorists, Terrorist organizations and Narcotics traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site—http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a "Specially Designated National and Blocked Person", as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments and no premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

## KINSALE
## TEXAS IMPORTANT NOTICE

**IMPORTANT NOTICE:**

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P. O. Box 149104

Austin, TX 78714-9104

Fax: [FAX #] (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE:**

Para obtener informacion o para someter una queja:

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104

Austin, TX 78714-9104

Fax: [FAX #] (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

ADF9003 0110

# EXHIBIT 6



September 18, 2017

Sent Via

> Certified Mail - Return Receipt Requested
> Regular Mail
> Email: burt@burtburnett.com

The Burnett Law Firm PLLC
Attention: Burt Burnett, Esq.
342 Cedar Street
Abilene, TX 79601

> Re:   <u>**Amended Reservation of Rights**</u>
>
> | | |
> |---|---|
> | **Insured:** | **The Burnett Law Firm PLLC** |
> | **Claimant:** | **Aylois Cook** |
> | **File No.:** | **00005895** |
> | **Case Name:** | ***Aylois Cook v. The Burnett Law Firm, PLLC and Burt Lee Burnett*** |
> | **Case Venue:** | **The District Court, 350th Judicial District, Taylor County, Texas** |
> | **Case No.:** | **11034-D** |

Dear Mr. Burnett:

You previously reported this claim to Kinsale Insurance Company ("Kinsale") on February 16, 2017. In response Kinsale acknowledged the claim, sent a reservation of rights letter and appointed defense counsel subject to that reservation of rights. Based on information provided to Kinsale, Kinsale has determined that additional exclusions from coverage found in the policy may apply. In order to advise you of these potential additional exclusions, Kinsale submits the amended reservation of rights letter.

### THE PETITION

This matter concerns the plaintiff, Aylois Cook, who filed a lawsuit in the District Court for the 350th Judicial District, Taylor County, case number 11034-D, against The Burnett Law Firm, PLLC and Burt Lee Burnett (hereinafter collectively referred to as "Burnett"). According to the amended petition, in June 2013, plaintiff retained Burnett to represent plaintiff in a personal injury case involving a motorcycle collision with an 18-wheeler ("the underlying action"), which occurred on June 25, 2013. The plaintiff alleges that the Burnett failed to diligently represent plaintiff as a reasonable and prudent lawyer would in the same or similar circumstances. The plaintiff alleges that Burnett contacted plaintiff less than three times throughout the duration of the underlying action. According to the petition, the underlying action settled on May 27, 2015. The plaintiff alleges that Burnett rarely contacted plaintiff and withheld information from plaintiff throughout the settlement process. The plaintiff alleges that Burnett failed to inform plaintiff of the correct policy limits, failed to notify plaintiff of potential settlement offers, failed to respond to plaintiff's calls, failed to notify plaintiff of the proposed settlement agreement, failed to receive permission from plaintiff to settle, and failed to inform plaintiff that the case was settled, closed or paid. According to the petition, Burnett received two checks from the attorney for Canal Insurance

Kinsale Insurance Company
Claims Department
2221 Edward Holland Drive, Suite 600, Richmond, VA 23230 · Phone 804.289.1300
P. O. Box 17008 · Richmond, Virginia 23226

EXHIBIT

6

The Burnett Law Firm PLLC
September 18, 2017
Page 2 of 11

Company, one for $19,000 and one for $181,000. The plaintiff alleges that Burnett never informed him of the existence or receipt of these checks. The plaintiff alleges that he was led to believe that the underlying action was ongoing and that he has not received any funds from the underlying action.

The plaintiff asserts a cause of action for negligence, as well as a second cause of action for loss of earning capacity, pain and suffering and related damages. The plaintiff alleges that, as a result of the alleged negligence of Burnett, plaintiff has sustained physical and mental pain, suffering and mental anguish. The plaintiff further asserts a claim for lost wages, which he alleges would have been reimbursed but for the alleged negligence of Burnett in the underlying action. The plaintiff further alleges that he remains unable to pay his medical bills. According to the petition, the plaintiff requests the following forms of relief: (a) past medical expenses related to the injuries sustained in the accident which forms the basis of the underlying action; (b) future medical expenses; (c) past physical pain and suffering; (d) future physical pain and suffering; (e) past physical impairment; (f) future physical impairment; (g) past disfigurement; (h) future disfigurement; (i) past mental anguish; (j) future mental anguish; (k) fear of future disease or condition; and, (l) cost of medical monitoring and prevention in the future. In addition, the plaintiff requests pre- and post-judgment interest.

Based on additional information received, it appears that the underlying action was resolved after a settlement agreement exists, with a notarized signature purporting to be that of Aylois Cook. Further, the $181,000 paid in connection with this settlement is no longer in the trust account used by Burnett. That account now appears to be closed and empty. Kinsale has requested from Burnett information regarding this account and the disposition of these funds. To date, no such information has been provided.

### THE POLICY

This matter was reported under the Lawyers Professional Liability Policy ("Policy") issued to Burnett by Kinsale, Policy number 0100035982-0, effective 02/20/2016 to 02/20/2017, with a Policy Retroactive Date of 11/24/2012, and limits of insurance of $2 million per claim and $2 million in the aggregate. The Policy includes a $25,000.00 per claim deductible that applies to both "damages" and "defense costs." Your attention is directed to the Policy which states as follows:

## LAWYERS PROFESSIONAL LIABILITY POLICY

*THIS IS A CLAIMS MADE AND REPORTED POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND BE REPORTED IN WRITING TO THE COMPANY WITHIN THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DAMAGES AND DEFENSE COSTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.*

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the declarations under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The Burnett Law Firm PLLC
September 18, 2017
Page 3 of 11

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS (SECTION II)**.

In consideration of payment of the premium, in reliance upon all statements made and information furnished to us, including the statements and information provided in the "application" which are made part of this Policy, and subject to all the terms, conditions and limitations of this Policy and its endorsements, we agree with you as follows:

## SECTION I: COVERAGE

### A. Insuring Agreement

1. We will pay, in excess of the Deductible shown in the Declarations, those sums any "insured" becomes legally obligated to pay as "damages" and "defense costs" because of a "claim" for a "wrongful act" arising out of "professional services" rendered or that should have been rendered.

2. This insurance applies to "claims" for "wrongful acts" only if:

   a. Prior to the effective date of this Policy, no "insured" had knowledge of any "wrongful act" that could reasonably give rise to a "claim" under this Policy;

   b. No common fact, circumstance, situation, transaction, event, service, advice or decision involved in a "professional service" was reported as a "claim" or potential claim under any prior policy or disclosed in the application for this Policy or any previous insurance policy for which you have applied;

   c. The "damages" arise out of a "professional service" rendered on or subsequent to the Policy Retroactive Date specified in the Declarations and before the end of this "policy period"; and

   d. The "claim" against you is first made to you during this "policy period" and is reported to us in writing during this "policy period" or in accordance with an Extended Reporting Period if applicable.

### B. Defense and Settlement

1. We will have the right and duty to defend the "insured" against a "claim" seeking those "damages". However, we will have no duty to defend the "insured" against any "claim" seeking "damages" for "professional services" to which this insurance does not apply. We may, at our discretion, investigate any "claim" that may result.

2. We have the right to negotiate the settlement of any "claim", whether within or above the deductible, and we will seek your written consent to any settlement. If the "named insured" refuses to consent to any settlement we recommend that is acceptable to the claimant, our Limit of Insurance for such "claim" is limited to the amount in excess of the Deductible we would have paid as "damages" had you consented to settlement at that time plus any "defense costs" covered by this Policy incurred up to the date of your refusal to settle.

The Burnett Law Firm PLLC
September 18, 2017
Page 4 of 11

3. The amount we will pay for "damages" or "defense costs" is limited to and shall reduce the applicable Limit of Insurance. Our right and duty to defend or settle ends when we have used up the applicable Limit of Insurance in the payment of "damages" or "defense costs". In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.

C. **Multiple Claims**

1. All "claims" for "damages" or "defense costs" arising out of "professional services" to the same person or entity will be deemed to have been made on the date on which the first of all such logically or causally connected "claims" is made against any "insured." For the purposes of this insurance, all "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision, will be considered to be one "wrongful act" and will be deemed to have taken place at the time the first of these related "wrongful acts" took place. All "claims" based upon such logically or causally connected "wrongful acts" shall be deemed to constitute a single "claim" and be subject to a single each claim Limit of Insurance.

**SECTION II – DEFINITIONS**

Defined terms are in quotation marks throughout this Policy and may be used in either the singular or plural, as appropriate.

B. "Bodily injury" means emotional distress, disease, physical or mental injury, mental anguish, mental tension, pain and suffering, shock, sickness or death of any person;

C. "Claim" means a written demand for monetary "damages" arising out of a "professional service" made against the "insured".

D. "Damages" means any compensatory amount any "insured" is legally obligated to pay as a result of a "claim" to which this Policy applies, including judgments, awards and settlements. "Damages" shall not include, and we will not pay "damages" or "defense costs" for:

1. Any fine, penalty, or sanction of any type against any "insured";
2. Equitable or non-pecuniary relief;
3. Any matter or amount that is uninsurable by law;
4. Money payable by any "insured" for or for the return of, royalties, commissions, fees, other forms of compensation, taxes, or profits; or
5. Punitive or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

E. "Defense costs" means:

1. Attorney's fees, expert witness fees and other fees and costs, including pre-judgment and post judgment interest paid by us or by you with our prior written consent, in the investigation and defense of covered "claims";

The Burnett Law Firm PLLC
September 18, 2017
Page 5 of 11

2. All other fees, costs and expenses resulting from the investigation, defense, settlement and appeal of a covered "claim" as authorized by us;
3. Premiums for bonds required as a result of a covered "claim", including bonds to release attachments, but only for bond amounts not exceeding the applicable Limit of Insurance.

If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer. Post-judgment interest includes interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

"Defense costs" shall not include the salaries and wages of any of our employees or your employees, officers or directors.

G. "Insured" means the "named insured" and:

1. Any past, present or future principal, partner, officer, director, member, manager, employee, stockholder, or trustee of the "named insured" but only with respect to "professional services" rendered on behalf of the "named insured" or a "predecessor firm";
2. Any past, present or future non-lawyer employee or member of the "named insured" but only while acting on behalf of the "named insured" or on behalf of a "predecessor firm";
3. The heirs, executors, administrators and legal representatives of each "insured", as defined in 1. above, in the event of death, incompetency or bankruptcy of such "insured", but only for liability arising out of "professional services" rendered by the "insured" prior to such "insured's" death, incompetency or bankruptcy;
4. Any "of counsel" or independent contractor but only for "claims" for "professional services" rendered on behalf of the "named insured" with your direct supervision and pursuant to a written contract with the "named insured";

I. "Named insured" means the entity or person listed in the Declarations.

L. "Policy period" means the period shown as such in the Declarations, unless earlier cancelled pursuant to the terms of this Policy.

N. "Professional services" means legal services rendered by or on behalf of the "named insured" or any "predecessor firm" for others:

1. As a licensed lawyer in good standing, arbitrator, mediator or notary public;
2. As an administrator, conservator, executor, guardian, trustee or any other similar fiduciary capacity, provided that such services are rendered in the course of the "insured's" activities as a lawyer.

P. "Wrongful act" means any actual or alleged negligent act, error, omission.

\*\*\*

The Burnett Law Firm PLLC
September 18, 2017
Page 6 of 11

## SECTION III – EXCLUSIONS

This Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged:

  D. Commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money, premium or tax;

  E. "Bodily injury";

  L. Notarization of a signature without the physical appearance of the signatory before the "insured";

  M. Criminal act;

  N. Fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature. However, if such allegations involve a "claim" to which this insurance otherwise applies, we shall defend such allegations against the "insured" until a judgment or other final adjudication establishes, or such "insured" admits, that the act, error, omission or offense was committed, or personally acquiesced in, by such "insured";

  R. Payment, division or apportionment or return of any fees;

***

## RESERVATION OF RIGHTS

Please be advised that Kinsale is reserving all of its rights under the Policy. As shown above in Section I: Coverage, A. Insuring Agreement, this insurance applies to "claims" for "wrongful acts" only if, among other things, prior to the effective date of this Policy, no "insured" had knowledge of any "wrongful act" that could reasonably give rise to a "claim" under this Policy. The effective date of the Policy issued by Kinsale to Burnett is 02/20/2016. "Wrongful act" is defined by the Policy as any actual or alleged negligent act, error, omission. According to the allegations in the petition, the underlying action was settled for $200,000 on 05/27/2015, which is prior to the effective date of the Policy. The plaintiff alleges that he was not notified of any settlement proceedings, did not consent to any settlement and that none of the settlement funds have been disbursed to him to date. Therefore, to the extent that an "insured" had knowledge of any alleged "wrongful act" which could reasonably give rise to a "claim," prior to the effective date of the Policy, 02/20/2016, there would be no coverage for this matter.

In addition, as shown above in Section III – Exclusions, exclusion D. states that this Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money, premium or tax. According to the allegations in the petition, Burnett failed to disburse any of the $200,000 in settlement funds to the plaintiff. Therefore, to the extent that this matter is based upon, arises out of or involves actual or alleged commingling, conversion, embezzlement, misappropriation or failure to pay any money, there would be no coverage pursuant to the above referenced exclusion. Similarly, to the extent that this matter is based upon the

The Burnett Law Firm PLLC
September 18, 2017
Page 7 of 11

notarization of a signature without the presence of Mr. Cook, there would be no coverage pursuant to the above referenced exclusion. Further, to the extent that monies paid in settlement and held in trust have been misappropriated, there would be no coverage under the criminal acts exclusion and the fraudulent act exclusion identified above.

As shown above in Section III – Exclusions, exclusion E. states that this Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged "bodily injury." "Bodily injury" is defined by the Policy as emotional distress, disease, physical or mental injury, mental anguish, mental tension, pain and suffering, shock, sickness or death of any person. The plaintiff is demanding damages for past and future physical injury and mental anguish, pain and suffering, as well as physical impairment, disfigurement, and fear of future disease or condition. Therefore, to the extent that this matter is based upon, arises out of or in any way involves "bodily injury," as that term is defined by the Policy, there would be no coverage for such pursuant to the above referenced exclusion.

As shown above in Section III – Exclusion, the Policy contains exclusion M., which states that this Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged criminal act. According to the allegations in the petition, Burnett failed to disburse any of the $200,000 in settlement funds to the plaintiff. To the extent that these allegations are based upon, arise out of or involve criminal acts, there would be no coverage for the same pursuant to the above referenced exclusion.

In addition, as shown above in Section III - Exclusions, the Policy contains exclusion N., which states that this Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature. However, if such allegations involve a "claim" to which this insurance otherwise applies, we shall defend such allegations against the "insured" until a judgment or other final adjudication establishes, or such "insured" admits, that the act, error, omission or offense was committed, or personally acquiesced in, by such "insured." According to the allegations in the petition, Burnett failed to disburse any of the $200,000 in settlement funds to the plaintiff. The plaintiff alleges that he was not notified of any settlement proceedings, did not consent to any settlement and that none of the settlement funds have been disbursed to him to date. Therefore, to the extent that this matter is based upon, arises out of or involves any actual or alleged fraudulent act, dishonest act, or intentional act, error or omission committed with knowledge of its wrongful nature, there would be no coverage for such pursuant to the above referenced exclusion.

The Policy contains exclusion R., shown above in Section III – Exclusions, which states that this Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged payment, division or apportionment or return of any fees. In addition, the Policy defines "damages" as any compensatory amount any "insured" is legally obligated to pay as a result of a "claim" to which this Policy applies, including judgments, awards and settlements. "Damages" shall not include, and we will not pay "damages" or "defense costs" for money payable by any "insured" for or for the return of, royalties, commissions, fees, other forms of compensation, taxes, or profits. According to the allegations in the petition, Burnett failed to disburse any of the $200,000 in settlement funds to the plaintiff. To the extent that any of the claimed damages constitute the return of fees or other forms of compensation, taxes or profits, there would be no coverage for the same pursuant to the above referenced Policy provisions.

The Burnett Law Firm PLLC
September 18, 2017
Page 8 of 11

The Policy also contains several additional endorsements which may serve to limit or negate coverage. Kinsale refers your attention to the Exclusion—Prior or Pending Litigation, Form PRO3004 0311, which contains the following language:

> This endorsement modifies insurance provided under the following:

> ALL COVERAGE FORMS

| SCHEDULE |
| --- |
| Prior or Pending Litigation Date  02/20/2016 |

> The following exclusion is added to this Policy:

>> This Policy does not apply to any "claim", "wrongful act", "damages", or "defense costs" based upon, arising out of, or in any way involving any litigation, proceeding or administrative hearing brought prior to or pending as of the Prior or Pending Litigation Date shown in the Schedule above, or to any future litigation, proceeding or administrative hearing based upon any such litigation, proceeding or administrative hearing or derived from the same facts or circumstances.

Based on information received, the current lawsuit brought by Mr. Cook appears to arise out of and/or involve a lawsuit which predated the "Prior or Pending Litigation Date" above.  As such, this Exclusion may limit or eliminate coverage for the above-referenced claim.

Please be advised the Kinsale is undertaking the investigation and defense of this matter pursuant to a full and complete reservation of rights under the Policy.

## DUTY TO COOPERATE

The policy places certain duties on you under Section VI—When There is a Claim.  That provision reads as follows:

> The "insured" shall immediately provide us with written notice of any "claim."  You and any other "insured" shall immediately provide us with any demands, notices, summons or other documents received in connection with the "claim", authorize us to obtain records and other information, and cooperate with us in the investigation, defense or settlement of the claim.

> All "insureds" shall assist us in the enforcement of any right against any person or organization that may be liable to any "insured" because of "damages" or "defense costs" to which this insurance may also apply.

> No "insured" will make a payment, accept liability, assume any obligation or incur any expense without first obtaining our approval, except at that "insured's" own cost.

Kinsale previously requested from you documents regarding the receipt of settlement funds and the administration of those funds.  To date, you have declined to respond to this request.  Kinsale notified

The Burnett Law Firm PLLC
September 18, 2017
Page 9 of 11

you that failure to provide this information prejudiced Kinsale's ability to participate in settlement negotiations on your behalf. Your failure to provide access to the requested information violates your obligations in the Policy and may result in a denial of benefits otherwise available under the Policy, including potentially any defense provided to the claims asserted by Aylois Cook and indemnity for those claims.

Kinsale also notes that the receipt and handling of the above-referenced funds and the settlement issues referenced by Mr. Cook pre-date your application for coverage. However, no mention of these matters was made in your application for coverage. As such, your application appears to violate your representations as contained in Section VII—General Conditions. That section of the Policy states, in relevant part:

    D.    Representations

        By accepting this Policy, you agree that:

        1.    The "application", and all other information and statements provided to us are true, accurate and complete and that the "application" and all such information and statements are made part of this Policy;

        2.    The "application" and all other information and statements provided to us are representations and warranties made to us on behalf of all "insureds";

        3.    The Policy has been issued in reliance upon the truth and accuracy of those representations and warranties; and

        4.    Concealment, misrepresentation or fraud in the procurement of this Policy which, if known by us, would have led us to refuse to enter into this contract at its current terms, conditions or pricing, or to provide coverage for a "claim" hereunder, will be deemed material and this Policy shall be void. In such an event, the Company shall have no obligation to return any portion of the premium.

    I.    Fraudulent Acts

        If any "insured" commits fraud in connection with any "claim" submitted to the Company, this insurance shall become void from the date such fraudulent "claim" is submitted. In such an event, the Company shall have no obligation to return any portion of the premium.

Your application for insurance dated February 18, 2016 states that neither you nor any employee of your lawfirm "know of any circumstances, acts, errors, omissions, or any allegations or contentions of any incident that could result in a claim." Kinsale notes that the alleged settlement of claims involving Mr. Cook occurred in 2015. As such, it appears that the representations and warranties made in your application for insurance may not be accurate. Kinsale hereby reserves its right to void the coverage provided by the Policy in accord with the above-referenced provisions.

The Burnett Law Firm PLLC
September 18, 2017
Page 10 of 11

## BINDING ARBITRATION

To the extent you dispute any portion of this reservation of rights, Kinsale calls your attention to Section X of the Policy, which provides as follows:

> All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a "named insured", an "insured", an additional insured or, the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding Arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

Kinsale hereby reserves its rights also to initiate arbitration regarding the coverage matters addressed within this reservation of rights letter.

## RIGHT TO AMEND

This letter is not a denial of coverage. At this time, Kinsale reserves all of its rights and defenses under the Policy. Nothing in this letter should be construed as a waiver or surrender of the terms, limitations, exclusions, conditions or agreements under the Policy. Nor should this letter be considered an exhaustive recitation of all potential coverage issues or provisions of the Policy that might apply. Our decision to reserve our rights is based on the information available to us at this time. Kinsale specifically reserves the right to amend this letter. By this letter, Kinsale does not waive any of its rights nor does it waive any of the terms, conditions, or provisions of the Policy. Kinsale specifically reserves all of its rights and remedies under the Policy as well as under statutes and common law. By defending this matter under a complete reservation of rights, Kinsale does not waive or intend to waive the future right to modify this correspondence in any way or withdraw it altogether.

Should you have any questions, or have additional information you wish to submit to Kinsale, I may be reached directly at 804-289-1366, via facsimile at 804-482-2762 or via email at caitlin.albro@kinsaleins.com.

Sincerely,

*Caitl Albro*

Caitlin Albro, J.D., AIC
Claims Counsel
Kinsale Insurance Company

**Applicable in Arkansas, Delaware, Kentucky, Louisiana, Maine, Michigan, New Jersey, New Mexico, New York, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Virginia, and West Virginia**

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and (NY: substantial) civil penalties. In LA, ME, and VA insurance benefits may also be denied.

**Kinsale Insurance Company**
**Claims Department**
2221 Edward Holland Drive, Suite 600, Richmond, VA 23230 · Phone 804.289.1300
P. O. Box 17008 · Richmond, Virginia 23226

The Burnett Law Firm PLLC
September 18, 2017
Page 11 of 11

CC:     ProAccess, LLC - Addison, TX
        Attention: Kathy Cupp
        Sent via email: kcupp@apspecialty.com

        Hartline Dacus Barger Dreyer, LLP
        Attention: Cynthia Crawford, Esq.
        Sent via email: CCrawford@hdbdlaw.com

EXHIBIT 7



**KINSALE INSURANCE**

Kinsale Insurance Company
P. O. Box 17008
Richmond, VA 23226
(804) 289-1300
www.kinsaleins.com

## LAW FIRM – PROFESSIONAL LIABILITY APPLICATION

### APPLICANT'S INFORMATION

1. Legal name of the business who is the primary applicant and will be the first named insured listed on the policy:
   _The Burnett Law Firm PLLC_
2. Please list all other business/dba names for which you are seeking coverage under this policy: _N/A_

3. ☒ Corporation ☐ Individual ☐ Partnership ☐ Municipality ☐ For Profit ☐ Joint Venture
   ☐ Other: _____
4. Please list any names of other entities that you own or manage or that you do business under (such entities are not requesting coverage under this policy): _None_

5. Primary location address: _342 Cedar St. Abilene, Tx 79601_
6. County of primary location: _Taylor_   Date business originally established: _2001_
7. Total number of branches? _3 offices_   List all addresses for additional branches: _2435 Veterans Blvd Ste B, Eagle Pass, Tx 78852   3102 Maple Ave, Ste 400 Dallas, Tx 75201_
8. What is your web-site address? www. _Burt Burnett. com_
9. What is your phone number? _325. 673. 4357_
10. Has the name or ownership of the entity changed or has any other business been purchased, merged or consolidated with the entity within the last 5 years?   Yes ☐ No ☒
11. Does any entity own or control your business or does your business own or control any entity?   Yes ☐ No ☒
12. During the past five years, has your name been changed or has any other business purchased, merged or consolidated with you?   Yes ☐ No ☒
    For questions 9-11, please fully explain any "yes" response, including the names, dates, and revenue impact involved:

13. Please list any associations of which you are a member: _Only professional associations such as American Bar Association etc._

### GENERAL INFORMATION

1. Complete the following for all of the firm's lawyers, independent contractor lawyers and "Of Counsel" lawyers:

| Lawyer Name | Designation Code* | Date Admitted to Bar (Mo-Yr) | Date Attorney Joined the Firm |
|---|---|---|---|
| 1. Burt Lee Burnett | O | 11/1993 | 2001 |
| 2. Majd Ghanayem | E | 11/2011 | July 2012 |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

*(use a blank page if needed to list additional attorneys)*

| *Designation Code | | | |
|---|---|---|---|
| O | Officers, Directors or Shareholders of the Corp. who are licensed as Lawyers | E | Employed Lawyers |
| S | Sole Proprietor | C | "Of Counsel" Lawyers | P | Partners of Partnership | I | Independent Contractor Lawyers |

EXHIBIT
7

2. Provide the total number of employees and/or support staff utilized: __10__

3. Total gross billings:
   a. Past 12 months: $ ≈ 3 million (contingent fees)
   b. Projected next 12 months: $ ≈ 5 million

4. Please indicate the types of Docket Control Systems currently used:

   ☐ Single Calendar  ☒ Dual Calendar  ☒ Computer  ☐ Master listing  ☐ Tickler cards  ☒ Other _MyCase + Google Calendar_

5. Is it the firm's standard practice to use engagement letters when agreeing to represent a client?  Yes ☒  No ☐
   If "No," please provide an explanation: _____

6. Is it the firm's standard practice to use non-engagement letters when refusing to  Yes ☒  No ☐
   represent a client? **If "No," please provide an explanation:** _____

7. A. How does the firm maintain its conflict of interest avoidance system?
   ☒ Computer  ☐ Index File  ☐ Conflict Committee  ☒ Other (describe) _Index listings on hardcopy in addition to computer_

   B. How often is the conflict of interest system updated?
   ☒ Daily  ☐ Weekly  ☐ Monthly  ☐ Other (describe) _____

   C. Does the conflict of interest system disclose attorney-client relationships created by newly  Yes ☒  No ☐
   hired lawyers, partners, predecessor, merged or acquired firms?

   D. If any lawyer of the firm becomes aware of a conflict of interest, do they  Yes ☒  No ☐
   disclose it in writing to all parties involved and all partners?
   **If "No," please explain:** _____

8. Does the firm refer clients, cases or work to other law firms?  Yes ☒  No ☐

9. **If Yes to # 8, please provide the following information:**

   a. The approximate number of such clients/cases/work for the past 12 months?  __5__
   Next 12 months? _____

   b. Description of the type of clients/cases/work you refer to other law firms? _Product liability cases_

   c. Before referring, do you always confirm that the working attorney is admitted to  Yes ☒  No ☐
   practice and in good standing with the bar of the jurisdiction at issue?
   **If No, please explain:** _____

   d. Do you always verify the working attorney has adequate malpractice insurance by  Yes ☒  No ☐
   requesting a copy of his/her insurance declarations page or a certificate of insurance?
   **If No, please explain:** _____

   e. Please describe any other measures used by you to verify the qualifications and reputation of a prospective working
   attorney to whom you refer clients/cases: _We research grievance histories through State bar as well as checking with attorneys with whom they worked in the past._

10. For the clients/cases/work referred to other law firms, please categorize the arrangements in place:

   a. Refer to another firm and you receive no fee: _____0_____ %
   b. You receive a fee but will not be doing any of the work: _____0_____ %
   c. You refer but will continue to work on the file along with the other attorney: ___100___ %
   d. Other: _____0_____ %

   **Must total 100%**

11. For the past 12 months, or for the next 12 months, do any of the firm's clients account for 25% or more of the firm's gross billings? Yes ☐ No ☒

   **If "yes", provide the percentage of billings and describe the nature of the work performed for each such client:** _____% Work performed _____

12. (a) How many suits for the collection of fees have been filed by the firm during the past 24 months? ___0___
   (b) How many of these suits have been resolved successfully? __N/A__ How many are still open? __N/A__

13. What percentage of time (not income) do you spend in the following areas of practice?
   **Total of A+B+C+D must equal 100%**

| A. | | C. | | |
|---|---|---|---|---|
| % | Admiralty—Defense | % | Collections | |
| % | Bankruptcy | % | Entertainment, sports or celebrity* | |
| % | Criminal matters | % | Oil, gas, or mining | |
| % | Defense of personal & bodily injury & workers compensation | % | Patent, copyright or trademark (complete Intellectual Property Supplement) | |
| % | Immigration | 100 % | Plaintiff's rep. In litigation (complete Plaintiff Litigation Supplement) | |
| % | Mediation | % | Taxation-Personal or Corporate | |
| % | Will, estate planning, probate | % | Title/Abstracting | |
| % | Family & Domestic Law | | | |
| % | **Subtotal (A)** | % | **Subtotal (C)** | |

*If any value is entered, complete Entertainment Related Area of Practice Application

| B. | | D. | | |
|---|---|---|---|---|
| % | Admiralty other than Defense | % | Banking, savings & loan, or other financial institution services | |
| % | Corporation formation/alteration (Non-SEC Related) | % | Bonds, commercial paper, limited partnerships, or State/Federal securities, both exempt & non-exempt (Complete Securities Supp.) | |
| % | Environmental | % | Real Estate - Commercial | |
| % | ERISA or Employee Benefits | % | Real Estate - Residential | |
| % | Investment Counseling/Money Mgt. (Complete Financial Planning Supplement) | % | Real Estate Development and/or Syndication/Limited Partnership | |
| % | International Law | % | Securities/SEC (Complete Securities Supp.) | |
| % | Labor Law | % | Other(Describe in detail by attachment) | |
| % | Mergers/Acquisitions | | | |
| % | Utilities/Municipality | | | |
| % | **Subtotal (B)** | % | **Subtotal (D)** | |
| | | 100% | **Total A + B + C + D** | |

Page 3 of 9

## INSURANCE AND LOSS HISTORY

1. Provide your firm's recent insurance history below:

|  | Insurance Company | Limits Per Claim/Aggregate | Policy Period (Month/Day/Year) | Annual Premium |
|---|---|---|---|---|
| Current Year | National Union Fire Ins | 2,000,000 | 12/13/14 to 2/20/14 | 11,449 |
| Previous Year 1 | BCS Insurance | 2,000,000 | 12/13/13 to 12/13/14 | 10,798 |
| Previous Year 2 |  |  |  |  |
| Previous Year 3 |  |  |  |  |
| Previous Year 4 |  |  |  |  |

2. If you are currently insured for professional liability coverage, what is your policy's retroactive date? (month/date/year)?
   11/24/2012 If there is no retroactive date, please check here. ☐

   **If requesting prior acts coverage you will be asked upon binding coverage to provide a copy of your current insurance declaration page documenting the expiring retroactive date and limits. Prior acts coverage may not be available if the date of your current retroactive coverage is different from what we have quoted or if there is any gap between effective dates.**

3. Are you being canceled or non-renewed by your current professional liability carrier?   Yes ☒  No ☐
   If Yes, please explain why: They want a lower Chse volume

4. Requested Limits: ☐ $100,000/$300,000  ☐ $500,000/$500,000  ☐ $300,000/$600,000  ☒ $1,000,000/$1,000,000
   ☐ Other $_____ /$_____

   Requested Deductible (Per Claim):  ☐ $2,500  ☐ $5,000  ☐ $10,000  ☐ Other_____

5. After inquiry with each person as appropriate, in the last five (5) years, has any professional liability
   claim or suit ever been made against the Firm or any predecessor firm or any current or former
   member of the Firm or predecessor firm?   Yes ☐  No ☒

   **If "Yes," how many? _____ Please complete a separate Supplemental Claim Form
   for each claim or suit and include a currently valued loss run for each claim.**

6. After inquiry with each person as appropriate, do you, or any of your partners, officers,
   directors, or employees know of any circumstances, acts, errors, omissions, or any allegations
   or contentions of any incident that could result in a claim?   Yes ☐  No ☒

   **If "Yes," how many? _____ If "Yes," please complete a separate Supplemental
   Claim Form for each potential claim and provide as much details as possible.**

7. After inquiry with each person as appropriate, has an attorney for who coverage is sought ever
   been refused admission to practice, been disbarred, suspended, reprimanded, sanctioned, or
   held in contempt by any court, administrative agency or regulatory body or been subject of a
   disciplinary complaint made to any of the aforementioned entities?   Yes ☐  No ☒

   **If "Yes," please provide a copy of the Bar complaint, your response, and a copy of their decision.**

**FRAUD WARNING**

**NOTICE TO ALABAMA, ALASKA, ARIZONA, ARKANSAS, CALIFORNIA, CONNECTICUT, DELAWARE, GEORGIA, IDAHO, ILLINOIS, INDIANA, IOWA, KANSAS, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NEVADA, NEW HAMPSHIRE, NORTH CAROLINA, NORTH DAKOTA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, VERMONT, WASHINGTON, WEST VIRGINIA, WISCONSIN, AND WYOMING APPLICANTS:** In some states, any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or, for the purpose of misleading, conceals information concerning any fact material thereto, may commit a fraudulent insurance act which is a crime in many states.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claiming with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**NOTICE TO FLORIDA APPLICANTS:** Any person who knowingly and with intent to injure, defraud or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**NOTICE TO HAWAII APPLICANTS:** For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

**NOTICE TO KENTUCKY APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**NOTICE TO LOUISIANA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MAINE APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.

**NOTICE TO NEW JERSEY APPLICANTS:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NOTICE TO NEW MEXICO APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**NOTICE TO NEW YORK APPLICANTS:** Any person who knowingly and with intent to defraud an insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation.

**NOTICE TO OHIO APPLICANTS:** Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA APPLICANTS: WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes a any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company, or other person, files an application for insurance or statement of a claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

**NOTICE TO TENNESSEE APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO VIRGINIA APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**The Applicant acknowledges that the answers provided herein are based on a reasonable inquiry and/or investigation. The Applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts.**

The Applicant agrees to notify us of any material changes in the answers to the questions on this questionnaire which may arise prior to the effective date of any policy issued pursuant to this questionnaire and the Applicant understands that any outstanding quotations may be modified or withdrawn based upon such changes at our sole discretion.

Completion of this form does not bind coverage. Applicant's acceptance of the company's quotation is required prior to binding coverage and policy issuance.

All written statements and materials furnished to the company in conjunction with this application are hereby incorporated by reference into this application and made a part of this application.

Applicant: _Burt L Burnett_ Title: _2/18/2016 Owner_

(Must be signed by a Principal, Partner, or Officer of the Firm)

Applicant's Signature: _Burt L Burnett_ Date: _2/18/2016_

Agent/Broker Name: _CBS Insurance, LLP_



**Kinsale Insurance Company**
P. O. Box 17008
Richmond, VA 23226
(804) 289-1300
www.kinsaleins.com

## PROFESSIONAL LIABILITY SUPPLEMENTAL CLAIM APPLICATION

- *This form is to be completed when the Applicant has been involved in any claim or is aware of an incident which may give rise to a claim. COMPLETE ONE FORM FOR EACH CLAIM OR INCIDENT.*
- *If space is insufficient to answer any questions fully, attach a separate sheet.*
- *In lieu of attaching suit papers, please provide a complete narrative description of the allegations involved*

### APPLICANT'S INFORMATION

1. Full Name of Applicant: _The Burnett Law Firm PLLC_

2. Full Name of Individual(s) or entity involved in the claim: _None_

3. Additional defendants _____

4. Full Name of Claimant: _____

5. Indicate whether:  ☐ CLAIM   ☐ SUIT   ☐ Incident/Circumstance Only (no claim or suit)

6. Date and location of alleged act, error or omission: _____

7. Date of claim: _____ Date reported to Insurance Company: _____

8. What is the status of the claim?  Closed/Settled ☐   Open/Pending ☐   Incident/Circumstance ☐

9. IF CLOSED:
   Total paid including deductible(s)? Responses *such as "unknown" or "unavailable" are insufficient.*

   |  | Defense costs | Loss/compensatory damages |
   |---|---|---|
   | Paid by you-out of pocket | $ | $ |
   | Insurance Company | $ | $ |

   Date Resolved: _____/_____/_____   Trial ☐   Out of Court ☐

10. IF PENDING:
    (a) Claimant's settlement demand? $ _____ Defendant's settlement offer (if any): $ _____
    (b) Insurer's reserve amounts? Loss $ _____ Defense $ _____
    (c) Amounts already spent defending the claim? By you? $ _____ By the insurer? $ _____
    (d) What is your best estimate of the likely settlement amount for this matter? $ _____
    (e) What is your best estimate of the date when you expect this claim to be resolved? _____
    *Note: Answering "unknown" or "unavailable" to the above questions is an insufficient response.*

11. Name(s) of Insurer(s) responding to this claim or incident _____
    Policy Number: _____
    Limits of Liability: _____ Deductible: _____

12. Provide narrative description of suit, claim or incident, including the allegations involved, the potential size of injury and your response: _____
_____

13. Explain what action(s) have been taken to prevent reoccurrence of a similar claim: _____
_____

**I declare that the information submitted herein is true to the best of my knowledge and becomes a part of my Professional Liability Application. I understand that an incorrect or incomplete statement could void my protection.**

_Kurt L Burnett_  Owner  2/18/2016
Signature of Applicant/Title/Date                    (Must be signed by a Principal, Partner or Officer of the Firm)

### FRAUD WARNING

**NOTICE TO ALABAMA, ALASKA, ARIZONA, ARKANSAS, CALIFORNIA, CONNECTICUT, DELAWARE, GEORGIA, IDAHO, ILLINOIS, INDIANA, IOWA, KANSAS, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NEVADA, NEW HAMPSHIRE, NORTH CAROLINA, NORTH DAKOTA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, VERMONT, WASHINGTON, WEST VIRGINIA, WISCONSIN, AND WYOMING APPLICANTS:** In some states, any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or, for the purpose of misleading, conceals information concerning any fact material thereto, may commit a fraudulent insurance act which is a crime in many states.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claiming with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS: WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**NOTICE TO FLORIDA APPLICANTS:** Any person who knowingly and with intent to injure, defraud or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**NOTICE TO HAWAII APPLICANTS:** For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

**NOTICE TO KENTUCKY APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**NOTICE TO LOUISIANA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MAINE APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.

**NOTICE TO NEW JERSEY APPLICANTS** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**NOTICE TO NEW MEXICO APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**NOTICE TO NEW YORK APPLICANTS** Any person who knowingly and with intent to defraud an insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed $5,000 and the stated value of the claim for each such violation.

**NOTICE TO OHIO APPLICANTS.** Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA APPLICANTS: WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes a any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO PENNSYLVANIA APPLICANTS:** Any person who knowingly and with intent to defraud any insurance company, or other person, files an application for insurance or statement of a claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

**NOTICE TO TENNESSEE APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**NOTICE TO VIRGINIA APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

The Applicant acknowledges that the answers provided herein are based on a reasonable inquiry and/or investigation. The Applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts.

The Applicant agrees to notify us of any material changes in the answers to the questions on this questionnaire which may arise prior to the effective date of any policy issued pursuant to this questionnaire and the Applicant understands that any outstanding quotations may be modified or withdrawn based upon such changes at our sole discretion.

Completion of this form does not bind coverage. Applicant's acceptance of the company's quotation is required prior to binding coverage and policy issuance.

All written statements and materials furnished to the company in conjunction with this application are hereby incorporated by reference into this application and made a part of this application.

Applicant: _Burt L Burnett_  Title: _Owner_
(Must be signed by a Principal, Partner, or Officer of the Firm)

Applicant's Signature: _Burt L Burnett_  Date: _2/18/2016_

Agent/Broker Name: _CBS Insurance, LLP_



**Kinsale Insurance Company**
P. O. Box 17008
Richmond, VA 23226
(804) 289-1300
www.kinsaleins.com

## PLAINTIFF LITIGATION SUPPLEMENT

**GENERAL INFORMATION**

1. Describe the types of cases handled with percentages for each, to total 100%:

| | | | | |
|---|---|---|---|---|
| Auto Related | 90 % | Medical Malpractice | | % |
| Admiralty | % | Products Related Injury | | % |
| Aviation | % | Toxic Tort | | % |
| Asbestos | % | Sexual Harassment | | % |
| Bodily Injury | 5 % | Tobacco | | % |
| (non-medical malpractice) | | Veterans | | % |
| Breast Implant | % | Workers Compensation | | % |
| Discrimination | % | Wrongful Death | 5 % |
| General Liability | % | Other (describe) | | |

2. What is the firm's average litigation case load per year? _75 cases at any given time but total of ≈200_

3. What percentage of the firm's litigation cases are settled before trial? _95%_

4. What percentage of the firm's litigation cases are tried to a verdict? _5%_

5. What percentage of the firm's litigation cases are handled on a contingency fee basis? _100%_

6. What is the estimated average dollar size of judgments, awards and settlements in the litigation cases handled by the firm? _50,000_

7. What is the largest judgment, award or settlement in a litigation case achieved by the firm in the past five years? _$2.1 million_

8. Does the firm take litigation case referrals from other law firms? Yes ☒ No ☐
   If Yes, please indicate the approximate number of cases and the types involved. _Personal Injury, Wrongful Death (Approximately 20/yr)_

9. Does the firm refer clients, cases or work to other law firms? Yes ☒ No ☐

10. If Yes to # 9, please provide the following information:

    a. The approximate number of such clients/cases/work for the past 12 months? _5_
       Next 12 months? _5_

b. Description of the type of clients/cases/work you refer to other law firms? _Product Liability_

c. Before referring, do you always confirm that the working attorney is admitted to practice and in good standing with the bar of the jurisdiction at issue?    Yes ☒   No ☐
   If No, please explain: _____

d. Do you always verify the working attorney has adequate malpractice insurance by requesting a copy of his/her insurance declarations page or a certificate of insurance?    Yes ☒   No ☐
   If No, please explain: _____

e. Please describe any other measures used by you to verify the qualifications and reputation of a prospective working attorney to whom you refer clients/cases: _We check grievance history_
   _And talk with attorneys with whom they have worked before_

11. For the clients/cases/work referred to other law firms, please categorize the arrangements in place:

   a. Refer to another firm and you receive no fee:    _0_ %
   b. You receive a fee but will not be doing any of the work:    _0_ %
   c. You refer but will continue to work on the file along with the other attorney:    _100_ %
   d. Other:    _0_ %

   **Must total 100%**

12. Has the firm been involved in any class action plaintiff cases within the past five years?    Yes ☐   No ☒
    **If yes, please complete a Class Action/Mass Tort supplemental application.**

I/We agree and understand this supplement becomes part of the application which forms a part of the policy. This information is true and correct to the best of my/our knowledge.

_____
Signature of Applicant/Title/Date       (Must be signed by a Principal, Partner, or Officer of the Firm)

# EXHIBIT 8

On Fri, Jul 28, 2017 at 3:00 PM, Caitlin Albro <<u>caitlin.albro@kinsaleins.com</u>> wrote:

Mr. Burnett,

We have retained a forensic accountant to investigate the whereabouts of the missing $181,000 in the above matter. As such, please send me trust account statements beginning 1 year prior to the deposit of the settlement funds in question, which I believe occurred in April 2015. Therefore, we will need the IOLTA trust account records beginning April 2014 to present. Please feel free to contact me with any questions.

Regards,

Caitlin

**Caitlin Albro, J.D., AIC - Claims Counsel**

Kinsale Insurance Company I 2221 Edward Holland Drive I Suite 600 I Richmond, VA 23230

<u>(804) 289-1366</u> office I <u>(804) 482-2762</u> fax I <u>caitlin.albro@kinsaleins.com</u> I <u>www.kinsaleins.com</u>





EXHIBIT

8

This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 19 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged

material for the sole use of the intended recipient and the disclosure to anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. If you are not the intended recipient, please contact the sender by return electronic mail and delete all copies of this communication. Please check for any defects or viruses before opening or using any attachments. There is no warranty that this e-mail is virus free or without error.  No Kinsale Company is liable if an attachment is altered without its written consent. Thank you.



**Gregory S. Hudson**
Direct Phone 832-214-3909
Direct Fax 713-512-5205
ghudson@cozen.com

September 15, 2017

Mr. Burt Burnett (Via Certified and First Class Mail)
The Burnett Law Firm
342 Cedar Street
Abilene, Texas 79601

Mr. Burt Burnett (Via Certified and First Class Mail)
The Burnett Law Firm
P.O. Box 1521
Abilene, Texas 79604

> Re:   *Aylois Cook v. The Burnett Law Firm P.L.L.C. and Burt Lee Burnett*, In the 350[th] Judicial District Court, Taylor County, Texas

Dear Mr. Burnett,

As you know, on July 28, 2017, Kinsale requested that you provide certain financial information to us, including "all trust account statements beginning one year before the deposit of the settlement funds in question," which would encompass all account records from April 2014 to present. This information is necessary to Kinsale's investigation of the filed claim. Although you asked for some additional time to comply with this request, you have not provided the requested information. You indicated at one point that you had confidentiality concerns, as the records in question would relate to client trust funds. To the extent needed to preserve any privilege, Kinsale will execute any reasonable protective order to maintain confidentiality.

Kinsale has now been informed of a time-sensitive settlement demand in connection with the above-referenced litigation. Kinsale is unable to respond to this demand until such time as it receives the requested information and has time to review same. In order that Kinsale be able to respond to this demand in a substantive fashion, production of the requested records must be done as soon as possible.

Mr. Burt Burnett
September 15, 2017
Page 2


Your obligation to cooperate with Kinsale in this matter is set forth in your insurance policy. Particularly, Kinsale issued to you Policy 0100035-982-0 with effective dates of February 20, 2016 – February 20, 2017 (the "Policy"). Among other items, the Policy contains the following language:

> SECTION VI—WHEN THERE IS A CLAIM
>
> The "insured" shall immediately provide us with written notice of any "claim". You and any other involved "insured" shall immediately provide us with any demands, notices, summons or other documents received in connection with the "claim", **authorize us to obtain records and other information, and cooperate with us in the investigation, defense or settlement of the claim**.

Emphasis added. The records requested are relevant to Kinsale's defense and investigation of the claim. More important, these records are critical to formulating a response to the settlement demand in question.

**Your failure to produce the requested records would be a violation of your obligations under the policy and could prejudice Kinsale in its investigation, handling and potential resolution of the claim asserted against you. Further, your failure to comply with your obligations under the Policy could support a denial of Policy benefits.** To avoid any such issue, please provide the requested records at your earliest opportunity.

Please contact me with any questions.


Sincerely,

COZEN O'CONNOR

Gregory S. Hudson v/p
By: Gregory S. Hudson

cc.    Ms. Cynthia Crawford, Esq. (via email)
       Hartline, Dacus, Barger, Dryer LLP
       1980 Post Oak Blvd., Suite 1800
       Houston, Texas 77056