John Dee Spicer
State Bar No. 18930500
Anne Elizabeth Burns
State Bar No. 24060832
CAVAZOS, HENDRICKS,
POIROT & SMITHAM, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Direct Dial: (214) 573-7343
Fax: (214) 573-7399
Email: aburns@chfirm.com

Attorneys for John Dee Spicer, Chapter 7 Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 17-42678-rfn-7 |
| BURT LEE BURNETT, | § | |
| | § | Hearing Date: January 22, 2018 |
| DEBTOR. | § | Hearing Time: 9:30 A.M. |
| | § | |

# TRUSTEE'S MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES: 214 COUNTY ROAD 227, SWEETWATER, TEXAS

TO THE HONORABLE RUSSELL F. NELMS,
UNITED STATES BANKRUPTCY JUDGE:

## NOTICE

**THE HEARING DATE ON SUCH SALE IS SET FOR JANUARY 22, 2018 AT 9:30 A.M., WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF. NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. TENTH STREET, FORT WORTH, TX 76102 AT LEAST FORTY-EIGHT (48) HOURS IN ADVANCE OF SUCH HEARING DATE.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.  IF NO OBJECTION IS FILED AND SERVED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

**IF ANY PARTY WISHES TO MAKE A HIGHER NET CASH OFFER FOR THE PROPERTY, SUCH OFFER SHOULD BE DIRECTED TO THE TRUSTEE PRIOR TO THE HEARING ON THIS MOTION; THE PARTY AND/OR ITS REPRESENTATIVE SHOULD ATTEND THE HEARING ON THIS MOTION AND BRING A CASHIER'S CHECK FOR AT LEAST $3,000.00 MADE PAYABLE TO "CENTENNIAL TITLE LLC ESCROW ACCOUNT" TO SERVE AS A CASH DEPOSIT TO BE PLACED WITH THE ESCROW AGENT AND THEREAFTER APPLIED TO THE PAYMENT OF THE PURCHASE PRICE. IF A HIGHER CASH OFFER IS RECEIVED, THE TRUSTEE RESERVES THE RIGHT TO SELL THE PROPERTY TO THE HIGHEST CASH BIDDER AT THE TIME OF THE HEARING, SUBJECT TO THIS COURT'S APPROVAL. HIGHER BIDS WILL ONLY BE ACCEPTED BY THE TRUSTEE IN INCREMENTS OF AT LEAST $2,500.00. AT THE CONCLUSION OF THE BIDDING PROCESS (A) THE HIGHEST BIDDER WILL BE REQUIRED TO SIGN AND DELIVER TO THE SELLER A CONTRACT OF SALE AGREEING TO THE PURCHASE OF THE PROPERTY UPON THE TERMS CONTAINED IN THE CONTRACT, BUT WITH THE PURCHASE PRICE BEING DEFINED THEREIN AS THE WINNING BID AMOUNT APPROVED BY THE BANKRUPTCY COURT AT THE CONCLUSION OF THE AUCTION SALE, AND (B) THE SECOND HIGHEST BIDDER WILL BE REQUESTED TO PLACE ON THIS COURT'S RECORD ITS AGREEMENT TO PURCHASE THE PROPERTY AT ITS HIGHEST BID AMOUNT IF FOR ANY REASON THE HIGHEST BIDDER FAILS TO CLOSE THE PURCHASE OF THE PROPERTY FOR ANY REASON.**

COMES NOW, John Dee Spicer, Chapter 7 Trustee herein (the "Trustee"), and files this his **Trustee's Motion for Authority to Sell Property Free and Clear of Liens, Claims, and Encumbrances: 214 County Road 227, Sweetwater, Texas** (the "Motion"), as follows:

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (N). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

2.      The above-titled and numbered case (the "Case") was filed under Chapter 11 of the United States Bankruptcy Code, Title 11 of the U.S. Code, 11 U.S.C. §101 *et seq*. (the "Bankruptcy Code") on June 30, 2017 (the "Petition Date"). The Case was converted to a Chapter 7 case on September 7, 2017 (the "Conversion Date"). The continued Section 341 meeting of creditors was held and concluded on November 29, 2017.

3.      Among the assets that constitute property of this bankruptcy estate are two tracts of land consisting of approximately 48.929 acres located at 214 County Road 227, Sweetwater, Nolan County, Texas, being described more fully below.

4.      The Trustee of this bankruptcy estate (the "Seller") desires to sell to CYNTHIA Y. ROSE and CLARENCE L. SWANNEGAN, JR., both individuals, and/or their assigns (collectively, the "Purchaser"), and the Purchaser has agreed to purchase from the Trustee all of the bankruptcy estate's interests in the tracts that are generally described in the preceding paragraph, and that are more particularly described, as follows (hereafter referred to as the "Property"):

a.      the tracts of land more commonly known as 214 County Road 277, Sweetwater, Texas (collectively, the "Land") located in Nolan County, Texas, being described more fully as:

**TRACT ONE**:

**45.93 ACRES OF LAND OUT OF THE DANIEL MCGEE SURVEY 298, NOLAN COUNTY, TEXAS.  DESCRIBED FURTHER BY METES AND BOUNDS AS FOLLOWS:**

**BEGINNING: AT AN IRON PIN THAT IS N 14°28'41'' W-1358.76' AND N 75°31'19'' E-735.15' FROM THE S.W. CORNER OF SAID DANIEL MCGEE SURVEY 298**

**THENCE: N 77°15'00" E-1534.59' TO AN IRON PIN IN THE WEST R/W OF COUNTY ROAD**

**THENCE: N 15°21'34'' W-1390.06' ALONG SAID WEST R/W TO A POINT IN THE SOUTH R/W OF A COUNTY ROAD**

**THENCE: S 77°15'00'' W-410.50' ALONG SAID SOUTH R/W TO AN IRON PIN**

**THENCE: S 09°25'45'' E 208.70' TO AN IRON PIN**

**THENCE: S 77°15'00" W-626.10 TO AN IRON PIN**

**THENCE: N 09''25'45'' W-208.70' AN IRON PIN**

**THENCE: S 77°15'00" W-497.96' TO AN IRON PIN**

**THENCE: 15°21'29'' E-1390.QS' TO THE PLACE OF BEGINNING AND CONTAINING 45.93 ACRES OF LAND MORE OR LESS.;**

**TRACT TWO**:

**BEING 2.999 ACRES OF LAND OUT OF THE DANIEL MCGEE SURVEY 298, NOLAN COUNTY, TEXAS, DESCRIBED FURTHER BY METES AND BOUNDS AS FOLLOWS:**

**BEGINNING AT A FOUND 1/2'' IRON PIN AT FENCE CORNER THAT IS N 74°05''42" E-1268.7' AND N 15°54'18 W-2488.7' FORM THE S.W. CORNER OF THE DANIEL MCGEE SURVEY 298;**

**THENCE N 15°4'18''W-208.7' TO A FOUND 1/2'' IRON PIN AT FENCE CORNER IN THE SOUTH RIGHTOF-WAY OF COUNTY ROAD 109;**

**THENCE N 77°31'10'' E- 626.7' ALONG THE SOUTH RIGHT-OF- WAY OF COUNTY ROAD 109 TO A FOUND 3/8'' IRON PIN AT FENCE CORNER;**

**THENCE S 15°53'00'' E-209.0' TO A FOUND 1/2'' IRON PIN AT FENCE CORNER;**

**THENCE S 77°32'56• W-626'.6 TO THE POINT OF BEGINNING AND CONTAINING 2.999 ACRES OF LAND, MORE OR LESS.**

together with all interest, if any, of Seller in strips or gores, if any, between the Land and abutting properties and any land lying, in or under the bed of any street, alley, road or right-of-way, opened or proposed, abutting or adjacent to the Land;

     b.     all buildings, structures and improvements on the Land, including, but not limited to, a mobile home unit (herein referred to as the "Improvements");

     c.     all rights, titles and interests of Seller in and to all oil, gas, hydrocarbons and all other minerals in, on, or under, or that may be produced from the Land;

     d.     all of Seller's interest in leases, subleases and rental agreements (written or verbal, now or hereafter in effect, if any) that grant a possessory interest in or that otherwise grant rights with regard to use of all or any portion of the Land;

     e.     all rights, titles and interests of Seller in and to any easements, rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road or avenue, open or proposed, in, on, across, in front of, abutting, or adjoining the Land;

     f.     all other rights, privileges and appurtenances owned by Seller and in any way related to the property interests described above in this paragraph.

5.      The Purchaser has offered to purchase the Property for $128,000.00 cash. (A copy of the Contract of Sale between the Trustee and the Purchaser, with an effective date of December 5, 2017 is attached hereto as **Exhibit "A"**; the "Contract").

6.      The Property is subject to standby fees, taxes and assessments by *ad valorem* taxing authorities for the calendar years 2016 and 2017 (collectively, the "Property Tax Liens").

7.      The Property is also allegedly subject to the liens described in the following instruments (collectively, the "First Bank Texas Liens"):

   a.   Require release of Deed of Trust recorded in Volume 1330, Page 255, Official Public Records, Nolan County, Texas, securing the payment of one certain promissory note dated May 22, 2015, in the original principal sum of $308,000.00, executed by BURT LEE BURNETT and payable to the order of FIRST BANK TEXAS;

   b.   Require release of Deed of Trust recorded in Volume 1382, Page 247, Official Public Records, Nolan County, Texas, securing the payment of one certain promissory note dated June 22, 2016, in the original principal sum of $135,000.00, executed by BURT L. BURNETT and payable to the order of FIRST BANK TEXAS; and

   c.   Require release of Deed of Trust recorded in Volume 1397, Page 8, Official Public Records, Nolan County, Texas, securing the payment of one certain promissory note dated October 18, 2016, in the original principal sum of $100,075.00, executed by BURT L. BURNETT and payable to the order of FIRST BANK TEXAS.

8.      The Property shall be sold free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363, including, but not limited to, the Property Tax Liens (but see Paragraph 14 below) and the First Bank Texas Liens.  Said liens, claims, and encumbrances shall attach to the proceeds of the sale of the Property.

9.      Pursuant to 11 U.S.C. § 363, the Trustee may sell the Property free and clear of any liens, claims, or encumbrances with the validity, amount and priority of such lien, claim or encumbrance against the proceeds of this sale to be determined by this Court at a later date.

10.     The Trustee proposes to sell the Property to the Purchaser for the price described above and upon the terms in the Contract, or to the highest cash bidder (see Paragraph 13 below), free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363, and from the proceeds of such sale (a) pay usual and customary closing costs, including, but not limited to, the premium for the owner policy of title insurance for the insured amount equal to the Purchase Price, the Trustee's half of the escrow fee, etc.; (b) pay the holder(s) thereof, as the case maybe, any amount necessary to satisfy the Property Tax Liens then due against the Property along with a *pro rata* share of the then current year's property taxes; (c) pay a real estate commission of 6% of the gross purchase price paid for the Property to MARK WAKELAND of WAKELAND PROPERTIES (the "Trustee's Real Estate Agent"), a real estate agent whose employment by the Trustee has been approved by this Court (with such real estate commission to be shared by the Trustee's Real Estate Agent, and the real estate agent, if any, of the ultimate buyer of the Property); and (d) to the extent the same are valid and subsisting and encumber all or a portion of the Property, pay to the holder thereof any amount necessary to satisfy the First Bank Texas Liens, in exchange for recordable Partial Releases of said liens.

11.     The Trustee requests that any orders issued pursuant to this Motion shall not prejudice the Trustee's ability to seek recovery of costs and expenses under 11 U.S.C. §§ 506(c).

12.     The disbursements made from the funds constituting the Purchase Price shall be deemed the disbursement of money or turnover of money, whether paid by the Escrow Officer closing the sale on behalf of the Trustee or by the Trustee directly, to parties in interest for the purposes of 11 U.S.C. § 326(a) of the Bankruptcy Code.

### Instructions for Interested Bidders

13.     If any party wishes to make a higher net cash offer for the Property, such offer should be directed to the Trustee prior to the hearing on this Motion; the party and/or its

representative should attend the hearing on this Motion and bring a cashier's check for at least $3,000.00 made payable to "CENTENNIAL TITLE LLC ESCROW ACCOUNT" to serve as cash deposit to be placed with the escrow agent and thereafter applied to the payment of the purchase price.  If a higher cash offer is received, the Trustee reserves the right to sell the Property to the highest cash bidder at the time of the hearing, subject to this Court's approval. Higher bids will only be accepted by the Trustee in increments of at least $2,500.00.  At the conclusion of the bidding process (A) the highest bidder will be required to sign and deliver to the Seller a Contract of Sale agreeing to the purchase of the Property upon the terms contained in the Contract, but with the Purchase Price being defined therein as the winning bid amount approved by the Bankruptcy Court at the conclusion of the auction sale, and (B) the second highest bidder will be requested to place on this Court's record its agreement to purchase the Property at its highest bid amount if for any reason the highest bidder fails to close the purchase of the Property for any reason.

14.     The year of closing *ad valorem* tax lien shall be expressly retained on the Property until the payment by the Purchaser of the year of closing taxes, plus any penalties or interest which may ultimately accrue thereon, in the ordinary course of business.

15.     The Trustee requests that the Court specifically order that the provisions of Bankruptcy Rule 6004(h) do not apply to the order issued approving the sale of this Property.

WHEREFORE, the Trustee prays for the approval of the sale of the Property under the terms set forth and for such other relief, as the Trustee may be entitled.

Respectfully submitted,

/s/Anne Elizabeth Burns
John Dee Spicer
State Bar No. 18930500
Anne Elizabeth Burns
State Bar No. 24060832
CAVAZOS, HENDRICKS,
POIROT & SMITHAM, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Direct Dial: (214) 573-7343
Fax: (214) 573-7399
Email: aburns@chfirm.com

Attorneys for John Dee Spicer,
Chapter 7 Trustee

## CERTIFICATE OF SERVICE

A Certificate of Service shall be filed contemporaneously herewith.

## CONTRACT OF SALE

THIS CONTRACT OF SALE (the "Contract") is made between JOHN DEE SPICER, Chapter 7 Trustee for BURT LEE BURNETT, an individual, and Debtor, under Case No. 17-42678-rfn-7, pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Seller"), and CYNTHIA Y. ROSE and CLARENCE L. SWANNEGAN, JR., both individuals, and/or their assigns (the "Purchaser"). In consideration of the agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

### ARTICLE I.

### Sale of the Property

Subject to the terms and provisions of this Contract, Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, all of the following described property (sometimes referred to herein in the aggregate as the "Property"):

(a) the tracts of land consisting of approximately 48.929 acres located at 214 County Road 227, Sweetwater, Nolan County, Texas (collectively, the "Land"), being described more fully as:

**TRACT ONE:**

**45.93 ACRES OF LAND OUT OF THE DANIEL MCGEE SURVEY 298, NOLAN COUNTY, TEXAS. DESCRIBED FURTHER BY METES AND BOUNDS AS FOLLOWS:**

**BEGINNING: AT AN IRON PIN THAT IS N 14°28'41" W-1358.76' AND N 75°31'19" E-735.15' FROM THE S.W. CORNER OF SAID DANIEL MCGEE SURVEY 298**

**THENCE: N 77°15'00" E-1534.59' TO AN IRON PIN IN THE WEST R/W OF COUNTY ROAD**

**THENCE: N 15°21'34" W-1390.06' ALONG SAID WEST R/W TO A POINT IN THE SOUTH R/W OF A COUNTY ROAD**

**THENCE: S 77°15'00" W-410.50' ALONG SAID SOUTH R/W TO AN IRON PIN**

**THENCE: S 09°25'45" E 208.70' TO AN IRON PIN**

**THENCE: S 77°15'00" W-626.10 TO AN IRON PIN**

**THENCE: N 09"25'45" W-208.70' AN IRON PIN**

**THENCE: S 77°15'00" W-497.96' TO AN IRON PIN**

CONTRACT OF SALE         Page 1 of 21

THENCE: 15°21'29" E-1390.QS' TO THE PLACE OF BEGINNING AND CONTAINING 45.93 ACRES OF LAND MORE OR LESS.;

TRACT TWO:

BEING 2.999 ACRES OF LAND OUT OF THE DANIEL MCGEE SURVEY 298, NOLAN COUNTY, TEXAS, DESCRIBED FURTHER BY METES AND BOUNDS AS FOLLOWS:

BEGINNING AT A FOUND 1/2" IRON PIN AT FENCE CORNER THAT IS N 74°05'42" E-1268.7' AND N 15°54'18 W-2488.7' FORM THE S.W. CORNER OF THE DANIEL MCGEE SURVEY 298;

THENCE N 15°4'18"W-208.7' TO A FOUND 1/2" IRON PIN AT FENCE CORNER IN THE SOUTH RIGHTOF-WAY OF COUNTY ROAD 109;

THENCE N 77°31'10" E- 626.7' ALONG THE SOUTH RIGHT-OF- WAY OF COUNTY ROAD 109 TO A FOUND 3/8" IRON PIN AT FENCE CORNER;

THENCE S 15°53'00" E-209.0' TO A FOUND 1/2" IRON PIN AT FENCE CORNER;

THENCE S 77°32'56• W-626'.6 TO THE POINT OF BEGINNING AND CONTAINING 2.999 ACRES OF LAND, MORE OR LESS.

together with all interest, if any, of Seller in strips or gores, if any, between the Land and abutting properties and any land lying, in or under the bed of any street, alley, road or right-of-way, opened or proposed, abutting or adjacent to the Land;

    (b)    all buildings, structures and improvements on the Land, including, but not limited to, a mobile home unit (herein referred to as the "Improvements");

    (c)    all rights, titles and interests of Seller in and to any oil, gas, hydrocarbons and all other minerals in, on, or under, or that may be produced from the Land;

    (d)    all of Seller's interest in leases, subleases and rental agreements (written or verbal, now or hereafter in effect, if any) that grant a possessory interest in or that otherwise grant rights with regard to use of all or any portion of the Land;

    (e)    all rights, titles and interests of Seller in and to any easements, rights-of-way, rights of ingress or egress or other interests in, on, or to, any land, highway, street, road or avenue, open or proposed, in, on, across, in front of, abutting, or adjoining the Land; and

    (f)    all other rights, privileges and appurtenances owned by Seller and in any way related to the property interests described above in this Article.

CONTRACT OF SALE                                   Page 2 of 21

All of the Property shall be sold, conveyed and assigned to Purchaser at the Closing (hereinafter defined) free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. §363 (f).

## ARTICLE II.

### Earnest Money Deposit

2.1. **Amount of Earnest Money and Title Company.** Purchaser shall upon his execution of this Contract deposit with CENTENNIAL TITLE, LLC, (attn: Ben Pace, Escrow Officer), 2 Village Drive, #101, Abilene, Texas 79606 (325-695-6440; ben.pace@centennial-title.net (hereinafter referred to as the "Title Company"), $3,000.00 cash (the "Earnest Money Deposit").

2.2. **Deposit of Earnest Money and Application.** If the Earnest Money Deposit shall be deposited by the Title Company in an interest-bearing account, all interest earned on the Earnest Money Deposit shall become a part of the Earnest Money Deposit. The Earnest Money Deposit is deposited with the Title Company with the understanding that the Title Company is not (a) a party to this contract and does not have any liability for the performance or non-performance of any party to this contract, (b) liable for interest on the Earnest Money Deposit or (c) liable for any loss of Earnest Money Deposit caused by the failure of any financial institution in which the Earnest Money Deposit has been deposited. If either party makes demand for the payment of the Earnest Money Deposit, the Title Company has the right to require from all parties a written release of liability of the Title Company for disbursement of the Earnest Money Deposit. Any refund or disbursement of the Earnest Money Deposit under this contract shall be reduced by the amount of unpaid expenses incurred on behalf of the party receiving the Earnest Money Deposit, and the Title Company shall pay the same to the creditors entitled thereto. At closing the Earnest Money Deposit shall be applied first to any cash down payment, then to Purchaser's closing costs and any excess refunded to Purchaser. Demands and notices required by this paragraph shall be in writing and delivered by hand delivery or by certified mail, return receipt requested.

## ARTICLE III.

### Purchase Price

The total purchase price for the Property (the "Purchase Price") shall be ONE HUNDRED TWENTY-EIGHT THOUSAND DOLLARS ($128,000.00) cash, to be paid to Seller at Closing (as such term is defined in Section 6.1 hereof), subject to prorations and other credits provided for in this Contract.

## ARTICLE IV.

### Title, Inspection, and Contingencies

4.1. **Title Commitment.** Seller shall, as soon as possible and not later than seven (7) days from the Effective Date, cause to be furnished to Purchaser a commitment for a standard form T-1 Texas Owner Policy of Title Insurance (the "Commitment"), issued through the Title Company, describing the Land, listing Purchaser as the proposed insured and showing the

**CONTRACT OF SALE**                                                     Page 3 of 21

Purchase Price as the policy amount. At such time as Seller causes the Commitment to be furnished to Purchaser, Seller shall further cause to be furnished to Purchaser legible copies of all instruments referred to in the Commitment as conditions or exceptions to title to the Property.

4.2.    **Review of Title**. Purchaser shall have a review period (the "Review Period") ending seven (7) days after the date on which Purchaser receives the last to be received of (i) the Commitment, and (ii) legible copies of all recorded documents referred to in the Commitment. Any title encumbrances or exceptions which are set forth in the Commitment, and to which Purchaser does not object within the Review Period, shall be deemed to be permitted exceptions to the status of Seller's title (the "Permitted Exceptions"). In the event that Purchaser shall object to the status of Seller's title during the Review Period, Seller shall have ten (10) business days within which to satisfy Purchaser's objections if Seller so elects, in its sole discretion. In the event Seller shall be unable or unwilling to satisfy Purchaser's objections within such ten (10) business day period, Purchaser shall have the option to either (i) waive Purchaser's objections and purchase the Property as otherwise contemplated in this Contract, notwithstanding such objections, in which event the subject matter of such waived objections shall become Permitted Exceptions, and Seller shall convey the Property to Purchaser, subject to all of such Permitted Exceptions or (ii) terminate this Contract, which shall be a Permitted Termination as provided in Section 7.1 hereof.

4.3    **Title Notices**.

(1)    *Statutory Tax Districts*. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Purchaser to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this Contract.

(2)    *Texas Agricultural Development District*. The Property is not located in a Texas Agricultural Development District. For additional information, contact the Texas Department of Agriculture.

(3)    *Transfer Fees*. If the Property is subject to a private transfer fee obligation, §5.205, Property Code requires Seller to notify Purchaser as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(4)    *Propane Gas System Service Area*. If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Purchaser written notice as required by §141.010, Texas Utilities Code.

## ARTICLE V.

### Warranties and Representations

5.1.    **Warranties and Representations of Seller**. Seller represents and warrants to Purchaser as of the date hereof and as of the Closing Date that, subject to Bankruptcy Court approval (as described below), Seller has full right, title, authority and capacity to execute and

perform this Contract and to consummate all of the transactions contemplated herein.

5.2. **Warranties and Representations of Purchaser**. Purchaser represents and warrants to Seller as of the date hereof and as of the Closing Date that:

(1) *Authority*. Purchaser consists of two (2) individuals, who are duly authorized to transact business in the State in which the Property is located. Purchaser has the full right and authority to enter into this Contract and consummate all of the transactions contemplated herein. All requisite action has been and will be taken by and on behalf of Purchaser in connection with the entering into this Contract, the instruments referenced herein and consummating the transactions contemplated hereby. The persons and/or entities signing this Contract on behalf of Purchaser are authorized to do so. Purchaser shall furnish to Title Company such documentation to evidence such authority as Seller shall reasonably request.

(2) *Consents; Binding Obligations*. Any third-party approvals or consents which may be required for Purchaser to enter into this Contract or to consummate the transactions contemplated hereby have been, or will prior to the Closing be, obtained by Purchaser. This Contract and all documents required hereby to be executed by Purchaser are and shall be valid, legally binding obligations of Purchaser, enforceable against Purchaser in accordance with their terms.

(3) *Inspection*. Purchaser is entering into this Contract and proceeding hereunder based solely upon Purchaser's independent inspections of the Property; Purchaser acknowledges that no person acting on behalf of Seller is authorized to make, and Purchaser acknowledges that no such person has made, any representation, warranty, guaranty or promise concerning the Property, whether oral or written, except as expressly set forth in this Contract: and no such representation, warranty, guaranty or promise now or hereafter made by any such person which is not, expressly set forth in this Contract shall be valid or binding upon Seller.

(4) *OFAC Provisions*. Purchaser is a "United States Person" within the meaning of Paragraph 7701(a) (30) of the Internal Revenue Code of 1986, as amended. Neither Purchaser nor any affiliate of Purchaser (x) is a Sanctioned Person (defined below), (y) has more than 15% of its assets in Sanctioned Countries (defined below), or (z) derives more than 15% of its operating income from investments in, or transactions with Sanctioned Persons or Sanctioned Countries. As used herein, the following terms have the following meanings:

(a) "OFAC" shall mean the U.S. Department of the Treasury Office of Foreign Assets Control.

(b) "Sanctioned Country" shall mean a country subject to a sanctions program identified on the list maintained by OFAC and available online at http://www.treas.gov/offices/enforcement/ofac/programs/index.shtml, or as otherwise published from time to time.

**CONTRACT OF SALE**                                                                 Page 5 of 21

(c) "Sanctioned Person" shall mean (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available online at http://www.treas.gov/offices/enforcement/ofac/sdn, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC.

## ARTICLE VI.

### Closing

6.1.    **Time and Place of Closing**. The closing of this transaction shall be held within twenty-one (21) days, but not earlier than fourteen (14) days, after an Order approving this sale is issued and entered by the Bankruptcy Court [see Section 8.17 below] (the "Closing"). Seller shall give to Purchaser at least two (2) business days prior written notice of the date of the Closing accompanied by a copy of such entered Order. The Closing shall take place at the office of the Title Company and the actual date on which the Closing is consummated is called the "Closing Date." (Notwithstanding the foregoing, the parties hereto agree to use reasonable efforts to cooperate and close this transaction via mail and other delivery services such that neither party's physical presence is required at the Title Company.)

6.2.    **Expenses**. Seller shall pay its share of the prorations as set forth in Section 6.3 hereof, one-half of the escrow fee charged by the Title Company, its own attorney's fees, and the title insurance premium for the Title Policy. Seller shall pay no other costs or expenses in connection with this Contract and the consummation of the transactions contemplated hereby. Purchaser shall pay the cost of its proportionate share of the prorations as set forth in Section 6.3 hereof, one-half of the escrow fee charged by the Title Company, its own attorney's fees and any and all other expenses including, but not limited to, survey costs, property inspection charges, Title Policy endorsement charges, recording costs and any real estate excise or transfer taxes.

6.3.    **Prorations**. Rental income, if any, and other operating expenses, if any, shall be prorated to the Closing Date, based upon actual days involved. To the extent that the actual amounts of such charges, expenses, and income referred to in this Section are unavailable at the Closing, the closing statements shall be based upon estimated amounts but such prorated amounts shall be final for all purposes as between Seller and Purchaser. *Ad valorem* taxes shall be prorated as of the Closing Date. Purchaser shall assume the payment of *ad valorem* taxes for the calendar year 2018 and subsequent years, including subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership. If this sale or Purchaser's use of the Property after closing results in the assessment of additional taxes, penalties, or interest ("Assessments") for periods prior to Closing, the Assessments will be the obligation of Purchaser. If Assessments are imposed because of Seller's use or change in use of the Property prior to Closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

Purchaser shall receive all income from and after the Closing Date, if any, and bear all expenses from and after the Closing Date.

6.4. **Deliveries at Closing**. At the Closing:

(a) Seller shall deliver to Purchaser the following:

(1) a Special Warranty Deed (the form of which is attached hereto as **Exhibit "A"**) duly executed and acknowledged by Seller, conveying to Purchaser the Property in indefeasible fee simple, free and clear of any lien, encumbrance, or exception other than the Permitted Exceptions;

(2) possession of the Property;

(3) such other evidence of the authority and capacity of Seller as the Title Company may reasonably require; and

(4) any other requirements of the Title Company for an Owner Policy of Title Insurance, dated at or after the Closing Date, issued in accordance with the Commitment (the "Title Policy") to be issued to Purchaser.

(b) Purchaser shall deliver to Seller the following:

(1) the Special Warranty Deed described in Section 6.4(a)(1) signed by Purchaser to evidence acceptance;

(2) the consideration required pursuant to Article III hereof in cash or by Purchaser's or the Title Company's certified or cashier's check in immediately available U.S. funds; and

(3) such evidence of the authority and capacity of Purchaser as Seller or the Title Company may reasonably require.

## ARTICLE VII.

### Termination, Default and Remedies

7.1. **Permitted Termination**. If this Contract is terminated by either Seller or Purchaser pursuant to a right expressly given it to do so hereunder (herein referred to as a "Permitted Termination"), except for a termination by Seller because of the default of Purchaser, the Earnest Money Deposit shall immediately be returned to Purchaser and this Contract shall thereafter be null and void subject to any obligations which by the express terms hereof are to survive any such termination.

7.2. **Default by Seller**. Seller shall be in default hereunder upon the occurrence of any one or more of the following events:

(a) Any of Seller's warranties or representations set forth herein are untrue or inaccurate in any material respect when made; or

(b)     Seller shall fail to materially meet, comply with or perform any covenant, agreement, or obligation within the time limits and in the manner required in this Contract, for any reason other than a Permitted Termination.

In the event of a default by Seller hereunder, Purchaser may terminate this Contract by written notice delivered to Seller at or prior to the Closing and Purchaser shall be entitled to return of the Earnest Money Deposit, thereby releasing both parties from the obligations of this Contract. In no event shall Purchaser have the remedy of specific performance against Seller.

7.3.     **Default by Purchaser**. Purchaser shall be in default hereunder upon the occurrence of any one or more of the following events:

(a)     Any of Purchaser's warranties or representations set forth herein are untrue or inaccurate in any material respect when made; or

(b)     Purchaser shall fail to materially meet, comply with or perform any covenant, agreement, or obligation within the time limits and in the manner required in this Contract for any reason other than a Permitted Termination.

In the event of a default by Purchaser hereunder, Seller, as Seller's sole and exclusive remedy for such default shall be entitled to terminate this Contract by notice to Purchaser, and retain the Earnest Money Deposit, it being agreed between Purchaser and Seller that such sum shall be liquidated damages for a default by Purchaser hereunder because of the difficulty, inconvenience, and uncertainty of ascertaining actual damages for such default.

## ARTICLE VIII.

### Miscellaneous

8.1.     **Damage to Property**. Seller agrees to give Purchaser prompt notice of any fire or other casualty affecting the Land or the Improvements between the date hereof and the Closing Date, but only if Seller has actual knowledge of same.

(a)     If prior to the Closing there shall occur:

(1)     any material damage to the Property caused by fire or other casualty; or

(2)     the taking or condemnation of all or any portion of the Land and the Improvements as would materially interfere with the use thereof;

then in any such event, Purchaser may at its option terminate this Contract by notice to Seller within five (5) days after Purchaser has received the notice referred to above or at the Closing, whichever is earlier. If Purchaser does not elect to terminate this Contract, then the Closing shall take place as provided herein without abatement of the Purchase Price, and there shall be assigned to Purchaser at the Closing, all interest of Seller in and

to any third party's insurance proceeds, or condemnation awards which would be payable to Seller on account of such occurrence.

    (b)    If prior to the Closing there shall occur:

        (1)    any damage to the Property caused by fire or other casualty which is not material; or

        (2)    the taking or condemnation of a portion of the Land and the Improvements which would not materially interfere with the use thereof;

then, in any such event, Purchaser shall have no right to terminate its obligations under this Contract, but there shall be assigned to Purchaser at the Closing all interest of Seller in and to any third party's insurance proceeds, or condemnation awards which may be payable to Seller on account of any such occurrence.

    8.2.    **Brokerage Commission.** Seller and Purchaser each represent that they have not contracted or dealt with any broker, real estate agent, or finder in connection with this Contract, other than with respect to Seller: MARK WAKELAND of WAKELAND PROPERTY COMPANY (the "Seller's Agent"). **PURCHASER AGREES TO INDEMNIFY SELLER AND HOLD SELLER HARMLESS FROM ANY LOSS, LIABILITY, DAMAGE, COST OR EXPENSE (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS FEES) PAID OR INCURRED BY SELLER BY REASON OF ANY CLAIM TO ANY BROKER'S, FINDER'S OR OTHER FEE IN CONNECTION WITH THIS TRANSACTION BY ANY PARTY, CLAIMING BY, THROUGH OR UNDER PURCHASER OTHER THAN THE SELLER'S AGENT.**

    **Notwithstanding anything to the contrary contained herein, upon the Closing of the sale transaction contemplated hereby, but only in the event of the Closing, the Seller shall pay the Seller's Agent a real estate commission equal to 6.00%. In the event of an auction sale of the Property as contemplated in Section 8.17 hereof and approved by the Bankruptcy Court, the Seller shall pay the Seller's Agent and the real estate agent, if any, of the ultimate purchaser of the Property each a real estate commission equal to 3.00% of the Purchase Price (or successful highest bid amount at the auction sale, as the case may be). No other party shall be entitled to any commission from Seller based upon this Contract or the transaction contemplated hereby.**

    8.3.    **Notices.** All notices, demands, requests and other communications required or permitted hereunder shall be in writing, and shall be deemed to be delivered when actually received, or, if earlier and regardless of whether actually received (except where receipt is specified in this Contract), upon deposit in a regularly maintained receptacle for the United States mail, registered or certified, postage fully prepaid, addressed to the addressee at its address set forth below or at such other address as such party may have specified theretofore by notice delivered in accordance with this Section and actually received by the addressee:

CONTRACT OF SALE                                     Page 9 of 21

If to Seller:  John Dee Spicer, Trustee
Cavazos, Hendricks, Poirot & Smitham, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, Texas 75202
Email: jdspicer@chfirm.com

with a copy to:  Anne Elizabeth Burns, Esq.
Cavazos, Hendricks, Poirot & Smitham, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, Texas 75202
Email: aburns@chfirm.com

If to Purchaser:  Cynthia Y. Rose and Clarence L. Swannegan, Jr.
3908 Ashwood Drive
Pearland, TX 77584
Email: cyndyrose0749@att.net
Email: clarenceswannegan@yahoo.com

with a copy to:  _____
_____
_____
Email: _____

**8.4.**  **Governing Law.** THE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE VALIDITY, ENFORCEMENT AND INTERPRETATION OF THIS CONTRACT.

**8.5.**  **Integration Modification; Waiver.** This Contract constitutes the complete and final expression of the agreement of the parties relating to the Property, and supersedes all previous contracts, agreements, and understandings of the parties, either oral or written, relating to the Property. This Contract cannot be modified, or any of the terms hereof waived, except by an instrument in writing (referring specifically to this Contract) executed by the party against whom enforcement of the modification or waiver is sought.

**8.6.**  **Counterpart Execution.** This Contract may be executed in several counterparts, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.

**8.7.**  **Headings; Construction.** The headings which have been used throughout this Contract have been inserted for convenience of reference only and do not constitute matter to be construed in interpreting this Contract. Words of any gender used in this Contract shall be held and construed to include any other gender and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise. The words "herein," "hereof," "hereunder" and other similar compounds of the words "here" when used in this Contract shall refer to the entire Contract and not to any particular provision or section.

**CONTRACT OF SALE**                                              **Page 10 of 21**

8.8. **Time is of the Essence**. With respect to all provisions of this Contract, time is of the essence. Notwithstanding the foregoing, if the last day of any time period stated herein shall fall on a Saturday, Sunday or legal holiday, then the duration of such time period shall be extended so that it shall end on the next succeeding day which is not a Saturday, Sunday or legal holiday.

8.9. **Invalid Provisions**. If any one or more of the provisions of this Contract, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Contract and all other applications of any such provision shall not be affected thereby.

8.10. **Binding Effect**. This Contract shall be binding upon and inure to the benefit of Purchaser, and Purchaser's heirs, personal representatives, successors and assigns. This Contract shall be binding upon and inure to the benefit of Seller (but only in Seller's capacity as Chapter 7 Trustee for BURT LEE BURNETT, an individual and Debtor, and upon any successor Chapter 7 Trustee appointed in the bankruptcy case pending in the Bankruptcy Court). Except as expressly provided herein, nothing in this Contract is intended to confer on any person, other than the parties hereto and their respective heirs, personal representatives, successors and assigns, any rights or remedies under or by reason of this Contract.

8.11. **Further Acts**. In addition to the acts recited in this Contract to be performed by Seller and Purchaser, Seller and Purchaser agree to perform or cause to be performed at the Closing, or after the Closing any and all such further acts as may be reasonably necessary to consummate the transactions contemplated hereby.

8.12. **Exhibits**. All references to Exhibits contained herein are references to Exhibits attached hereto, all of which are made a part hereof for all purposes the same as if set forth herein verbatim, it being expressly understood that if any Exhibit attached hereto which is to be executed and delivered at Closing contains blanks, the same shall be completed correctly and in accordance with the terms and provisions contained herein and as contemplated herein prior to or at the time of execution and delivery thereof.

8.13. **[Intentionally omitted.]**.

8.14. **Effective Date**. The date of formation of this Contract (herein called the "Effective Date") shall for all purposes be the date the Title Company acknowledges receipt of a fully executed counterpart of this Contract and the Earnest Money Deposit.

8.15. **Notice of Indemnification**. THE PARTIES TO THIS CONTRACT HEREBY ACKNOWLEDGE AND AGREE THAT THIS CONTRACT CONTAINS INDEMNIFICATION OBLIGATIONS PURSUANT TO SECTION 8.2 HEREOF.

8.16. **Property Conveyed "AS IS"**. IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND SPECIFICALLY DISCLAIMS ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY, INCLUDING, BUT NOT LIMITED TO,

CONTRACT OF SALE                                                    Page 11 of 21

WARRANTIES OR REPRESENTATIONS AS TO MATTERS OF TITLE (OTHER THAN SELLER'S WARRANTY OF TITLE SET FORTH IN THE SPECIAL WARRANTY DEED TO BE DELIVERED AT CLOSING), ZONING, TAX CONSEQUENCES, PHYSICAL OR ENVIRONMENTAL CONDITIONS, AVAILABILITY OF ACCESS, INGRESS OR EGRESS, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, GOVERNMENTAL REGULATIONS OR ANY OTHER MATTER OR THING RELATING TO OR AFFECTING THE PROPERTY, INCLUDING, WITHOUT LIMITATION, (i) THE VALUE, CONDITION, MERCHANTABILITY, MARKETABILITY, PROFITABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE OF THE PROPERTY, (ii) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS INCORPORATED INTO ANY OF THE PROPERTY, AND (iii) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY. PURCHASER HAS NOT RELIED UPON AND WILL NOT RELY UPON, EITHER DIRECTLY OR INDIRECTLY, ANY REPRESENTATION OR WARRANTY OF SELLER OR ANY AGENT OF SELLER. PURCHASER REPRESENTS THAT IT IS A KNOWLEDGEABLE PURCHASER OF REAL ESTATE AND THAT IT IS RELYING SOLELY ON ITS OWN EXPERTISE AND THAT OF PURCHASER'S CONSULTANTS IN PURCHASING THE PROPERTY. PURCHASER WILL CONDUCT SUCH INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS PURCHASER DEEMS NECESSARY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AND SHALL RELY UPON SAME. UPON CLOSING, PURCHASER SHALL ASSUME THE RISK THAT ADVERSE MATTERS, INCLUDING, BUT NOT LIMITED TO, ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY PURCHASER'S INSPECTIONS AND INVESTIGATIONS. PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING, SELLER SHALL SELL AND CONVEY TO PURCHASER AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS," WITH ALL FAULTS. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS, COLLATERAL TO OR AFFECTING THE PROPERTY BY SELLER, ANY AGENT OF SELLER OR ANY THIRD PARTY. THE TERMS AND CONDITIONS OF THIS PARAGRAPH SHALL EXPRESSLY SURVIVE THE CLOSING, NOT MERGE WITH THE PROVISIONS OF ANY CLOSING DOCUMENTS AND SHALL BE INCORPORATED INTO THE SPECIAL WARRANTY DEED. SELLER IS NOT LIABLE OR BOUND IN ANY MANNER BY ANY ORAL OR WRITTEN STATEMENTS, REPRESENTATIONS, OR INFORMATION PERTAINING TO THE PROPERTY FURNISHED BY ANY REAL ESTATE BROKER, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON, UNLESS THE SAME ARE SPECIFICALLY SET FORTH OR REFERRED TO HEREIN. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT THE PROVISIONS OF THIS SECTION 8.16 WERE A MATERIAL FACTOR IN THE DETERMINATION OF THE PURCHASE PRICE FOR THE PROPERTY.

8.17. **Bankruptcy Court Approval; Jurisdiction.** Seller is the duly appointed Chapter 7 Trustee, in the bankruptcy proceeding under Case No. 17-42678-rfn-7 pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the

"Bankruptcy Court"). **SELLER'S OBLIGATION TO CLOSE HEREUNDER IS EXPRESSLY CONDITIONED ON THE APPROVAL OF THIS TRANSACTION BY THE BANKRUPTCY COURT. PURCHASER UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT THE BANKRUPTCY COURT MAY NOT APPROVE THE SALE CONTEMPLATED BY THE CONTRACT IF THE PURCHASE PRICE IS INSUFFICIENT TO SATISFY ALL LIENS, CLAIMS AND ENCUMBRANCES AGAINST THE PROPERTY AND/OR IF A HIGHER OR BETTER OFFER TO PURCHASE THE PROPERTY IS MADE TO THE SELLER PRIOR TO THE BANKRUPTCY COURT'S HEARING TO APPROVE THE SALE TO PURCHASER. IN THE EVENT SUCH APPROVAL IS NOT OBTAINED ON OR BEFORE FEBRUARY 28, 2018 THE EARNEST MONEY DEPOSIT SHALL BE PROMPTLY RETURNED TO PURCHASER, THEREBY RELEASING BOTH PARTIES FROM THIS CONTRACT.** Any suit or action arising out of this Contract shall be subject to the jurisdiction of the Bankruptcy Court and venue in any such suit or action shall be the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

The Seller's motion to approve this sale filed with the Bankruptcy Court will contain language to the effect of:

If any party wishes to make a higher net cash offer for the Property, such offer should be directed to the Trustee prior to the hearing on this motion (the "Sale Hearing"); the party and/or its representative should attend the hearing on this motion, bring a signed Contract of Sale in a form acceptable to the Trustee for $133,000.00, and bring a cashier's check for at least $3,000.00 made payable to "Centennial Title, LLC Escrow Account" to serve as a cash deposit to be placed with the escrow agent and thereafter applied to the payment of the purchase price. If a higher cash offer is received, the Trustee reserves the right to sell the Property to the highest cash bidder at the time of the Sale Hearing, subject to this Court's approval. Higher bids will only be accepted by the Trustee in increments of at least $2,500.00. At the conclusion of the bidding process (A) the highest bidder will be required to sign and deliver to the Seller a Contract of Sale agreeing to the purchase of the Property upon the terms contained in this Contract, but with the Sales Price being defined therein as the winning bid amount approved by the Bankruptcy Court at the conclusion of the auction sale, and (B) the second highest bidder will be requested to place on this Court's record its agreement to purchase the Property at its highest bid amount if for any reason the highest bidder fails to close the purchase of the Property for any reason.

8.18.   **Seller-Bankruptcy Trustee.** Because Seller is a Chapter 7 Bankruptcy Trustee, (i) Seller binds himself hereunder, and in the transactions contemplated herein, only in his capacity as Chapter 7 Bankruptcy Trustee, and (ii) Seller has no actual or constructive knowledge of the condition of the Property or any matter affecting the Property, and, thus, makes no representations or warranties with respect to the condition of the Property or any other matter affecting the Property, and, therefore, Seller will convey the Property **"AS IS, WHERE IS AND WITH ALL FAULTS,"** and with no representations or warranties, as described in Section 8.16, above, and as set forth in the Special Warranty Deed attached hereto as **Exhibit "A".**

CONTRACT OF SALE

8.19. **Assignment**. Purchaser may assign its rights hereunder only to a related party, defined as: (i) an entity to which Purchaser is an owner, partner or corporate officer; or (ii) a member or members of the immediate family of Purchaser, or a trust which the beneficiary or beneficiaries is or are a member or members of the immediate family of Purchaser.

SELLER:

JOHN DEE SPICER, Trustee for BURT LEE
BURNETT, Debtor, Bankruptcy Case No. 17-
42678-rfn-7, in the United States Bankruptcy
Court for the Northern District of Texas,
Fort Worth Division

Executed by Seller on:

December __7__, 2017

PURCHASER:

CYNTHIA Y. ROSE

CLARENCE L. SWANNEGAN, JR.

Executed by Purchaser on:

December ____, 2017
12/01/2017      12/01/2017
04:19 PM CST    08:05 PM CST

**CONTRACT OF SALE**                                    Page 14 of 21

RECEIPT OF EARNEST MONEY DEPOSIT AND AGREEMENT OF TITLE COMPANY

The Title Company hereby acknowledges the receipt of the following:

(i)         one fully executed copy of this Contract; and

(ii)        the Earnest Money Deposit in the amount of $3,000.00.

The Title Company hereby agrees to hold the Earnest Money Deposit as contemplated by this Contract and to dispose of it in strict accordance with the terms and provisions of this Contract.

CENTENNIAL TITLE, LLC

By: _____

Printed name: _Ben Pace_____

Title: _Closing Coordinator_____

Date: December _5_, 2017

---

**CONTRACT OF SALE**                              **Page 15 of 21**

EXHIBIT "A"

SPECIAL WARRANTY DEED

STATE OF TEXAS     §
                         §     KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF JOHNSON    §

That John Dee Spicer, Chapter 7 Trustee for BURT LEE BURNETT, an individual and Debtor, under Case No. 17-42678-rfn-7, pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, per **Order Granting Trustee's Motion for Authority to Sell Property Free and Clear of Liens, Claims, and Encumbrances: 214 County Road 227, Sweetwater, Nolan County, Texas** entered \_\_\_\_\_ \_\_\_, 2018 (a copy of which Order is attached hereto as **EXHIBIT ONE**) (the "Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration to the undersigned paid by CYNTHIA Y. ROSE and CLARENCE SWANNEGAN, JR., both individuals ("Grantee"), whose address is 3908 Ashwood Drive, Pearland, Texas 77584, the receipt of which is hereby acknowledged, has GRANTED, SOLD AND CONVEYED, and by these presents does GRANT, SELL AND CONVEY unto Grantee, all of the following described property:

       (a)     the tracts of land consisting of approximately 48.929 acres located at 214 County Road 227, Sweetwater, Nolan County, Texas (collectively, the "Land"), being described more fully as:

**TRACT ONE:**

**45.93 ACRES OF LAND OUT OF THE DANIEL MCGEE SURVEY 298, NOLAN COUNTY, TEXAS. DESCRIBED FURTHER BY METES AND BOUNDS AS FOLLOWS:**

**BEGINNING: AT AN IRON PIN THAT IS N 14°28'41" W-1358.76' AND N 75°31'19" E-735.15' FROM THE S.W. CORNER OF SAID DANIEL MCGEE SURVEY 298**

**THENCE: N 77°15'00" E-1534.59' TO AN IRON PIN IN THE WEST R/W OF COUNTY ROAD**

**THENCE: N 15°21'34" W-1390.06' ALONG SAID WEST R/W TO A POINT IN THE SOUTH R/W OF A COUNTY ROAD**

**THENCE: S 77°15'00" W-410.50' ALONG SAID SOUTH R/W TO AN IRON PIN**

**THENCE: S 09°25'45" E 208.70' TO AN IRON PIN**

**THENCE: S 77°15'00" W-626.10 TO AN IRON PIN**

THENCE: N 09"25'45" W-208.70' AN IRON PIN

THENCE: S 77°15'00" W-497.96' TO AN IRON PIN
THENCE: 15°21'29" E-1390.QS' TO THE PLACE OF BEGINNING AND
CONTAINING 45.93 ACRES OF LAND MORE OR LESS.;

TRACT TWO:

BEING 2.999 ACRES OF LAND OUT OF THE DANIEL MCGEE SURVEY 298,
NOLAN COUNTY, TEXAS, DESCRIBED FURTHER BY METES AND BOUNDS
AS FOLLOWS:

BEGINNING AT A FOUND 1/2" IRON PIN AT FENCE CORNER THAT IS N
74°05'42" E-1268.7' AND N 15°54'18 W-2488.7' FORM THE S.W. CORNER OF
THE DANIEL MCGEE SURVEY 298;

THENCE N 15°4'18"W-208.7' TO A FOUND 1/2" IRON PIN AT FENCE
CORNER IN THE SOUTH RIGHTOF-WAY OF COUNTY ROAD 109;

THENCE N 77°31'10" E- 626.7' ALONG THE SOUTH RIGHT-OF- WAY OF
COUNTY ROAD 109 TO A FOUND 3/8" IRON PIN AT FENCE CORNER;

THENCE S 15°53'00" E-209.0' TO A FOUND 1/2" IRON PIN AT FENCE
CORNER;

THENCE S 77°32'56• W-626'.6 TO THE POINT OF BEGINNING AND
CONTAINING 2.999 ACRES OF LAND, MORE OR LESS.

together with all interest, if any, of Seller in strips or gores, if any, between the Land and
abutting properties and any land lying, in or under the bed of any street, alley, road or
right-of-way, opened or proposed, abutting or adjacent to the Land;

(b)     all buildings, structures and improvements on the Land, including, but not
limited to, a mobile home unit (herein referred to as the "Improvements");

(c)     all rights, titles and interests of Seller in and to any oil, gas, hydrocarbons
and all other minerals in, on, or under, or that may be produced from the Land;

(d)     all of Seller's interest in leases, subleases and rental agreements (written or
verbal, now or hereafter in effect, if any) that grant a possessory interest in or that
otherwise grant rights with regard to use of all or any portion of the Land;

(e)     all rights, titles and interests of Seller in and to any easements, rights-of-
way, rights of ingress or egress or other interests in, on, or to, any land, highway, street,
road or avenue, open or proposed, in, on, across, in front of, abutting, or adjoining the
Land; and

CONTRACT OF SALE                                                    Page 17 of 21

(f)    all other rights, privileges and appurtenances owned by Seller and in any way related to the properties described above in this paragraph;

together with all improvements attached thereto (collectively, the "Property"), subject only to the items described in the attached **Exhibit "A"**.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto Grantee, and Grantee's successors and assigns forever; and Grantor does hereby bind himself, his successors and assigns, but only in his capacity as CHAPTER 7 TRUSTEE for BURT LEE BURNETT, an individual, and Debtor, to WARRANT AND FOREVER DEFEND, all and singular, the Property unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the Property or any part thereof, by, through, or under Grantor, but not otherwise.

Grantee by its acceptance hereof, does hereby assume and agree to pay any and all *ad valorem* taxes and special assessments pertaining to the Property for calendar year 2018 and subsequent years, including subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership.

EXCEPT AS OTHERWISE SET FORTH IN SECTION 5.1 OF THE CONTRACT OF SALE BETWEEN GRANTOR AND GRANTEE, EFFECTIVE DECEMBER __, 2017 (THE "CONTRACT"), GRANTOR IS NOT MAKING AND HAS NOT MADE, AND GRANTOR HEREBY SPECIFICALLY DISCLAIMS, ANY WARRANTY OR REPRESENTATION OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OR REPRESENTATIONS AS TO MATTERS OF TITLE (OTHER THAN GRANTOR'S WARRANTY OF TITLE CONTAINED IN THIS SPECIAL WARRANTY DEED), ZONING, TAX CONSEQUENCES, PHYSICAL OR ENVIRONMENTAL CONDITIONS, AVAILABILITY OF ACCESS, INGRESS OR EGRESS, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, GOVERNMENTAL REGULATIONS OR ANY OTHER MATTER OR THING RELATING TO OR AFFECTING THE PROPERTY, INCLUDING, WITHOUT LIMITATION, (i) THE VALUE, CONDITION, MERCHANTABILITY, MARKETABILITY, PROFITABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE OF THE PROPERTY, (ii) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS INCORPORATED INTO ANY OF THE PROPERTY AND (iii) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY. GRANTEE ACKNOWLEDGES AND REPRESENTS THAT IT HAS NOT RELIED UPON AND WILL NOT RELY UPON, EITHER DIRECTLY OR INDIRECTLY, ANY REPRESENTATION OR WARRANTY OF GRANTOR OR ANY AGENT OF GRANTOR. GRANTEE FURTHER ACKNOWLEDGES AND REPRESENTS THAT IT IS A SOPHISTICATED PURCHASER OF REAL ESTATE AND THAT IT IS RELYING SOLELY ON ITS OWN EXPERTISE AND THAT OF GRANTEE'S CONSULTANTS IN PURCHASING THE PROPERTY. GRANTEE REPRESENTS THAT IT HAS CONDUCTED SUCH INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS GRANTEE HAS DEEMED NECESSARY, INCLUDING, BUT NOT LIMITED TO THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF AND SHALL RELY UPON SAME. GRANTEE HEREBY ACKNOWLEDGES THAT IT ASSUMES THE RISK

CONTRACT OF SALE                                                    **Page 18 of 21**

THAT ADVERSE MATTERS, INCLUDING, BUT NOT LIMITED TO, ADVERSE PHYSICAL AND ENVIRONMENTAL CONDITIONS, MAY NOT HAVE BEEN REVEALED BY GRANTEE'S INSPECTIONS AND INVESTIGATIONS. GRANTEE ACCEPTS THE PROPERTY, AND ACKNOWLEDGES THAT THE CONVEYANCE OF THE PROPERTY TO GRANTEE IS MADE BY GRANTOR, ON AN "AS IS, WHERE IS, AND WITH ALL FAULTS" BASIS. GRANTEE FURTHER ACKNOWLEDGES AND AGREES THAT THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS, COLLATERAL TO OR AFFECTING THE PROPERTY BY THE GRANTOR, ANY AGENT OF THE GRANTOR OR ANY THIRD PARTY. GRANTEE FURTHER ACKNOWLEDGES AND REPRESENTS THAT GRANTOR SHALL NOT BE LIABLE OR BOUND IN ANY MANNER BY ANY ORAL OR WRITTEN STATEMENTS, REPRESENTATIONS, OR INFORMATION PERTAINING TO THE PROPERTY FURNISHED BY ANY REAL ESTATE BROKER, AGENT, EMPLOYEE, SERVANT OR OTHER PERSON. GRANTEE FURTHER ACKNOWLEDGES AND AGREES THAT THE PURCHASE PRICE FOR THE PROPERTY IS A DISCOUNTED PRICE BASED UPON THE PROPERTY BEING CONVEYED "AS IS, WHERE IS, AND WITH ALL FAULTS" AS PROVIDED HEREIN AND IN SECTION 8.16 OF THE CONTRACT, AND THAT GRANTOR WOULD NOT HAVE AGREED TO SUCH PURCHASE PRICE BUT FOR THE PROVISIONS OF SECTION 8.16 OF THE CONTRACT.

GRANTEE'S AGREEMENT TO, AND ACKNOWLEDGMENT OF, THE VARIOUS MATTERS SPECIFIED IN THIS SPECIAL WARRANTY DEED SHALL BE CONCLUSIVELY EVIDENCED BY GRANTEE'S ACCEPTANCE HEREOF.

EXECUTED this _____ day of _____, 2018.

GRANTOR:

[Exhibit Counterpart; Do Not Sign]

_____
JOHN DEE SPICER, Trustee for BURT LEE BURNETT, Debtor, Bankruptcy Case No. 17-42678-rfn-7, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division

CONTRACT OF SALE                                                    Page 19 of 21

ACCEPTED AND AGREED TO
this ___ day of ____, 2018.

GRANTEES:

[Exhibit Counterpart; Do Not Sign]

_____
CYNTHIA Y. ROSE


[Exhibit Counterpart; Do Not Sign]

_____
CLARENCE L. SWANNEGAN, JR.


## ACKNOWLEDGMENTS

STATE OF TEXAS      §
                            §
COUNTY OF DALLAS   §

     This instrument was acknowledged before me on _____, 2017, by JOHN DEE SPICER, TRUSTEE, in the capacity therein stated.

                       [Exhibit Counterpart; Do Not Sign]

                       _____
                       Notary Public, State of Texas

STATE OF TEXAS      §
                            §
COUNTY OF _____   §


     This instrument was acknowledged before me on _____, 2017, by CYNTHIA Y. ROSE, an individual.

                       [Exhibit Counterpart; Do Not Sign]

                       _____
                       Notary Public, State of Texas

STATE OF TEXAS      §
                            §
COUNTY OF _____   §


     This instrument was acknowledged before me on _____, 2017, by CLARENCE L. SWANNEGAN, JR., an individual.

                       [Exhibit Counterpart; Do Not Sign]

                       _____
                       Notary Public, State of Texas

**CONTRACT OF SALE**                                        **Page 20 of 21**

**EXHIBIT "A"**
**TO**
**SPECIAL WARRANTY DEED**


**Permitted Exceptions**

1. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

2. Standby fees, taxes and assessments by any taxing authority for the year 2011, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership.

3. Rights of parties in possession.

4. All visible and apparent easements or uses and all underground easements or uses, the existence of which may arise by unrecorded grant or by use.

5. Rights, if any, of third parties with respect to any portion of the subject property lying within the boundaries of a public or private road.

6. *\*\*\*Further Permitted Exceptions as delineated in the Title Commitment\*\*\**.

CONTRACT OF SALE